**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED-ED4

CLERK
U.S. DISTRICT COURT
JUDGE NORGLE

DOCKETED

JAN 2 1 2003

| | |
|---|---|
| CIT FINANCIAL USA, INC. F/K/A NEWCOURT FINANCIAL USA, INC., Plaintiff, | ) ) ) ) |
| v. | ) ) |
| FLASH 1 HOUR FOTO, INC., NIRANJAN PATEL, and KAUSHALYA PATEL | ) ) ) ) |
| Defendants. | ) ) |

03C00397

MAGISTRATE JUDGE NOLAN

## COMPLAINT FOR BREACH OF LEASE AGREEMENT, SCHEDULE AGREEMENT, GUARANTY, AND FOR REPLEVIN

Plaintiff CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., by its attorneys, Gould & Ratner, complains of Defendants Flash 1 Hour Foto, Inc., Niranjan Patel, and Kaushalya Patel as follows:

1.       Plaintiff, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc. ("CIT"), is a Delaware corporation with its principal place of business at 650 CIT Drive, Livingston, New Jersey, 07039.

2.       Defendant Flash 1 Hour Foto, Inc. ("Flash"), is an Illinois Corporation with its principal place of business in Illinois.

3.       Defendant Niranjan Patel is an Illinois citizen who resides at 3 Pentwater Drive, South Barrington, Illinois  60010 and is a resident of Illinois.

4.       Defendant Kaushalya Patel is an Illinois citizen who resides at 3 Pentwater Drive, South Barrington, Illinois  60010 and is a resident of Illinois.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. 1332 because this dispute is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of costs and interest.

6.      Venue is proper in the District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391(a) in that jurisdiction is based on diversity of citizenship and a substantial part of the events giving rise to the claim occurred in this District.

## PRELIMINARY ALLEGATIONS

7.      On or about November 6, 1998, Flash and American Leasing Alliance, LLC d/b/a Graphic Arts Capital, LLC ("American") executed a Master Lease Agreement ("Lease"), a copy of which is attached as Exhibit A.

8.      Pursuant to the Lease, Flash leased a newly manufactured Indigo E-Print Pro Digital Offset Press ("Press") from American in consideration for payments of 60 monthly installments of rent at $4,716.33.

9.      Pursuant to the Lease, title to the Press remained with American.  Exhibit A, ¶ 13.

10.     On or about November 6, 1998, Flash and American executed a Purchase Agreement Assignment, attached as Exhibit B.  Pursuant to the Purchase Agreement, Flash assigned to American all of its right, title and interest in and to the Press.

11.     On or about November 6, 1998, Niranjan Patel and Kaushalya Patel signed a Guaranty, attached as Exhibit C, whereby they jointly and severally and unconditionally guaranteed to CIT that they would fully and promptly pay and perform all of Flash's present and future obligations to CIT in the event Flash failed to pay.

12.     On or about December 15, 1998, American executed an Assignment Without

Recourse ("Assignment"), attached as Exhibit D. Pursuant to the Assignment, American sold, assigned and transferred to CIT all its right, title, and interest in and to the Press, Lease and the Guaranty.

13.     On or about December 15, 1998, Flash executed a Notice and Acknowledgement of Assignment, attached as Exhibit E, acknowledging American's transfer of its Lease interests to CIT.

## COUNT I
### (Breach of November 6, 1998 Contract – Flash)

14.     CIT repeats and realleges, as paragraph 14, the allegations of paragraphs 1 through 13, inclusive, as though fully set forth here.

15.     Pursuant to the Lease, Flash was obligated to pay to CIT 60 monthly installments of $4,716.33, commencing on December 15, 1998.

16.     Flash failed to make the March 15, 2001 to September 15, 2001 payments.

17.     Flash's failure to make the March 15, 2001 to September 15, 2001 payments constitutes a default under the terms of the Lease.

18.     CIT has made written demand to Flash to cure said default. A true and correct copy of said demand is attached as Exhibit F.

19.     Flash failed to cure said default.

20.     Pursuant to the Lease, in the event of a default, CIT may demand, "the then present value of all unpaid and future Rent together with any other amounts owed under the applicable Schedule...." Exhibit A, ¶ 12(a)(v).

21.     As a consequence of Flash's failure to cure said default, the full remaining unpaid balance of the Lease is due and owing.

3

22.    CIT has performed all of its obligations pursuant to the terms of the Lease.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., requests entry of a judgment in its favor and against Flash in the amount of $169,787.89, plus interest, costs of collection, and attorneys' fees and grant such further relief as this Court deems appropriate.

## COUNT II
### (Breach of Guaranty on November 6, 1998 Contract Niranjan Patel)

23.    CIT reasserts and realleges as paragraph 23, paragraphs 1 through 22, inclusive, as though fully set forth herein.

24.    Under the Guaranty, Niranjan Patel agreed to unconditionally guarantee to the full and prompt performance by Flash of all obligations under the Lease.

25.    To date, Niranjan Patel has made no payments to CIT pursuant to his obligation under the Guaranty.

26.    CIT has made written demand to cure said default.  A true and correct copy of said demand is attached as Exhibit F.

27.    Niranjan Patel, despite demand, has breached the Guaranty by failing to pay the amounts owed to CIT by Flash.

28.    As of August 16, 2002, $169,787.89 is due and owing under the Guaranty.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., requests entry of a judgment in its favor and against Niranjan Patel in the amount of $169,787.89, plus interest, costs of collection, and attorneys' fees and grant such further relief as this Court deems appropriate.

## COUNT III
### (Breach of Guaranty on November 6, 1998 Contract Kaushalya Patel)

29.     CIT reasserts and realleges as paragraph 29, paragraphs 1 through 22, inclusive, as though fully set forth herein.

30.     Under the Guaranty, Kaushalya Patel agreed to unconditionally guarantee to the full and prompt performance by Flash of all obligations under the Lease.

31.     To date, Kaushalya Patel has made no payments to CIT pursuant to her obligation under the Guaranty.

32.     CIT has made written demand to cure said default.  A true and correct copy of said demand is attached as Exhibit F.

33.     Kaushalya Patel, despite demand, has breached the Guaranty by failing to pay the amounts owed to CIT by Flash.

34.     As of August 16, 2002, $169,787.89 is due and owing under the Guaranty.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., requests entry of a judgment in its favor and against Kaushalya Patel in the amount of $169,787.89, plus interest, costs of collection, and attorneys' fees and grant such further relief as this Court deems appropriate.

## COUNT IV
### (Replevin)

35.     CIT repeats and realleges, as paragraph 35, the allegations of paragraphs 1 through 13, inclusive, as though fully set forth here.

36.     CIT is lawfully entitled to possession of the Press.

37.     Upon information and belief, the Press is wrongfully detained by Flash in Cook County, at 1720 North Rand Road, Palatine, Illinois.

38.     The Press has not been taken for any tax, assessment or fine levied by virtue of any law of this state against the property of CIT, nor seized under any exception or attachment or order for replevin entered by the Court against the goods and chattels of CIT liable to execution or attachment, or order for replevin not held by virtue of any order of replevin against CIT.

39.     The value of the Equipment is approximately $228,000.00.

40.     CIT claims the value of the Press not delivered to the Officer under the order for replevin entered by the Court.

41.     Attached hereto and incorporated herein are true and correct copies of the following:

    a.  Master Lease Agreement between American and Flash dated November 6, 1998 (Exhibit A);
    b.  Purchase Agreement Assignment between American and Flash dated November 6, 1998 (Exhibit B);
    c.  Assignment without Recourse (Lease) between American and CIT dated December 15, 1998 (Exhibit D);
    d.  UCC-1 Statements in favor of American assigning American's interest to CIT (Exhibit G).

42.     CIT previously demanded that Flash make past due payments under the Lease or return the equipment.

43.     Flash failed to pay amounts due under the Lease and has failed to return the Equipment.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., asks that an order of replevin issue and for judgment against Flash for:

    a.  possession of the Property;
    b.  the value of Property not delivered; and
    c.  damages for the detention.

6

## COUNT V
### (Breach of December 15, 1998 Contract – Flash)

44.     CIT repeats and realleges, as paragraph 44, the allegation of paragraphs 1 through 22, inclusive, as though fully set forth here.

45.     On or about December 15, 1998, Flash and American executed a Lease Schedule Agreement ("Schedule Agreement"), a copy of which is attached as Exhibit H.

46.     The Schedule Agreement incorporated the terms and conditions of the Lease.

47.     Pursuant to the Schedule Agreement, Flash leased one Challenge Titan 2000 Paper Cutter, one Challenge Model T1 Jogger, and one Baum 71AMP Autofold ("Equipment") from American in exchange for 60 monthly installments of rent at $502.14.

48.     On or about December 15, 1998, Flash and American executed a Purchase Agreement Assignment, attached as Exhibit I.  Pursuant to the Purchase Agreement, Flash assigned to American all of its right, title and interest in and to the Equipment.

49.     On or about March 15, 1999, American executed an Assignment, attached as Exhibit J.  Pursuant to the Assignment, American sold, assigned and transferred to CIT all its right, title, and interest in and to the Equipment and Schedule Agreement.

50.     On or about March 10, 1999, Flash executed a Notice and Acknowledgement of Assignment, attached as Exhibit K, acknowledging American's transfer of its Lease interests to CIT.

51.     Pursuant to the Schedule Agreement,  Flash is in default of the Schedule Agreement if Flash "is in default of any other lease, contract, agreement or obligation now existing or hereinafter entered into with [CIT]".  Exhibit A, ¶ 11(g).

52.     Flash is in default under the Lease.

53.     Flash's default under the terms of the Lease constitutes a default under the terms of the Schedule Agreement.

54.     CIT has made written demand to Flash to cure said default.  A true and correct copy of said demand is attached as Exhibit L.

55.     Flash failed to cure said default.

56.     Pursuant to the Schedule Agreement, in the event of a default, CIT may demand, "the then present value of all unpaid and future Rent together with any other amounts owed under the applicable Schedule...."  Exhibit A, ¶ 12(a)(v).

57.     As a consequence of Flash's failure to cure said default, the full remaining unpaid balance of the Schedule Agreement is due and owing.

58.     CIT has performed all of its obligations pursuant to the Schedule Agreement.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., requests entry of a judgment in its favor and against Flash 1 Hour Foto, Inc. in the amount of $8,536.38, plus interest, costs of collection, and attorneys' fees and grant such further relief as this Court deems appropriate.

## COUNT VI
**(Breach of Guaranty on December 15, 1998 Contract Niranjan Patel)**

59.     CIT reasserts and realleges as paragraph 59, paragraphs 44 through 58 inclusive, as though fully set forth herein.

60.     Under the Guaranty, Niranjan Patel agreed to unconditionally guarantee to the full and prompt performance by Flash of all obligations under the Schedule Agreement.

61.     To date, Niranjan Patel has made no payments to CIT pursuant to his obligation under the Guaranty.

62.     CIT has made written demand to cure said default. A true and correct copy of said demand is attached as Exhibit L.

63.     Niranjan Patel, despite demand, has breached the Guaranty by failing to pay the amounts owed to CIT by Flash.

64.     As of August 16, 2002, $8,536.38 is due and owing under the Guaranty.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA, Inc., requests entry of a judgment in its favor and against Niranjan Patel in the amount of $8,536.38, plus interest, costs of collection, and attorneys' fees and grant such further relief as this Court deems appropriate.

## COUNT VII
### (Breach of Guaranty on December 15, 1998 Contract Kaushalya Patel)

65.     CIT reasserts and realleges as paragraph 65, paragraphs 44 through 58 inclusive, as though fully set forth herein.

66.     Under the Guaranty, Kaushalya Patel agreed to unconditionally guarantee to the full and prompt performance by Flash of all obligations under the Schedule Agreement.

67.     To date, Kaushalya Patel has made no payments to CIT pursuant to her obligation under the Guaranty.

68.     CIT has made written demand to cure said default. A true and correct copy of said demand is attached as Exhibit L.

69.     Kaushalya Patel, despite demand, has breached the Guaranty by failing to pay the amounts owed to CIT by Flash.

70.     As of August 16, 2002, $8,536.38 is due and owing under the Guaranty.

WHEREFORE, CIT Financial USA, Inc. formerly known as Newcourt Financial USA,

Inc., requests entry of a judgment in its favor and against Kaushalya Patel in the amount of

$8,536.38, plus interest, costs of collection, and attorneys' fees and grant such further relief as

this Court deems appropriate.

Respectfully submitted,

CIT FINANCIAL USA, INC.

By *David Bartlett*

One of its Attorneys

Christopher J. Horvay (#01263315)
David F. Bartlett (#6236672)
GOULD & RATNER
222 North LaSalle Street - Suite 800
Chicago, IL 60601-1086
312/236-3003

# Exhibit A



Lake In The Hills, IL 60102
ph.847.458.0191    fx.847.458.0197

# MASTER LEASE AGREEMENT
# NO. GACC121598

Lessee _____ FLASH 1 HOUR FOTO, INC. _____

Address _____ 15 East Golf Road, Arlington Heights, IL 60005 _____

This Master Lease Agreement ("Agreement"), including the terms and conditions on the reverse side hereof and any Schedule hereto, sets forth the entire Agreement between AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC, which maintains an office at 1301 Pyott Road, Suite 103, Lake In The Hills, IL 60102 ("Lessor"). No agreement or understanding shall be binding on either of the parties hereto unless in writing and executed by the parties hereto.

1. **Lease.** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the personal property (the "Equipment") described in the Lease Schedule(s) (the "Schedule") executed and to be executed by the parties hereto. Each Schedule shall constitute a separate lease of Equipment and the provisions hereof will be deemed to be a part thereof. This Agreement and all Schedules hereunder are non-cancellable.

2. **Performance by Lessor.** Lessor is not obligated to perform under this Agreement unless before the expiration of credit approval (i) Lessor receives from Lessee a fully signed and completed Agreement, Schedule and other such documents as Lessor may require, (ii) Lessor receives a Certificate of Acceptance evidencing that the Equipment has been delivered to and irrevocably accepted by Lessee for lease and/or use from Lessor, (iii) Lessor receives from vendor of the Equipment, or from Lessee, clear and unencumbered title to any Equipment, and (iv) there is no Default under Section 11. If Lessor has accepted a Purchase Agreement Assignment but the Lease does not commence within 30 days following such acceptance, Lessor may reassign such assignment to Lessee without recourse or warranty and Lessee will reimburse Lessor for all expense incurred, plus interest at the Overdue Rate in Section 12(c). For each Schedule, Lessee irrevocably authorizes Lessor to adjust the Equipment Acquisition Amount and Rent by no more than ten percent (10%) to account for actual out of pocket costs to Lessor associated with change orders or returns, invoicing errors and similar matters. Lessee agrees to any resulting adjustments in the transaction's terms, if different from those stated in the applicable Schedule.

**Term and Rental Payments.** The term of the lease for any Equipment ("Initial Lease Term"), its commencement date ("Lease Commencement Date"), and the amount of the rental payments ("Rent"), together with the sales tax thereon, if applicable, and the payment thereof, will be as provided in the Schedule related to such Equipment. The Initial Lease Term shall continue for the term stated in the Schedule. Rent shall be due on the same day of each Payment Period (as stated in the Schedule), in advance, as the Lease Commencement Date, unless otherwise stated on the Schedule. Rent paid in advance, if any, shall be applied to the first Rent due and then to the final Rents, in reverse order, or, at Lessor's option, to payment of any overdue obligation of Lessee.

**Payment Obligation.** All Rents and other payments due and payable under each Schedule shall be made to Lessor in immediately available funds of the United States of America at the following address: 1301 Pyott Road, Suite 103, Lake In The Hills, IL 60102, or at such other address as Lessor may designate from time to time. Rent shall be due and payable whether or not Lessee has received any notice that such Rent is due. **EACH SCHEDULE SHALL BE A NET LEASE, AND LESSEE'S OBLIGATION TO PAY ALL RENTS AND OTHER SUMS WHEN DUE AND TO OTHERWISE PERFORM AS REQUIRED UNDER THE SCHEDULE SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF SUCH LEASE, LESSOR'S STRICT LIABILITY OR NEGLIGENCE, FROM THE CONDUCT OF A THIRD PARTY, OR OTHERWISE.** If any Equipment is unsatisfactory for any reason, Lessee shall make any im solely against the manufacturer or supplier of such Equipment and shall, nevertheless, pay Lessor or its assignee all amounts due and payable under the Schedule.

**Location.** Lessee will cause Equipment to be possessed and operated in accordance with any applicable manufacturer's manuals or instructions, by competent duly qualified personnel, in accordance with applicable governmental laws and regulations, if any, and for business purposes only. Lessee. Lessee agrees not to remove Equipment from the location set forth in the related Schedule without Lessor's prior written consent, which consent not be unreasonably withheld.

**Risk of Loss; Maintenance; Uninsured Loss and Damage.** Lessee assumes all risk of r damage to Equipment until its return to Lessor and agrees that Equipment will be ed and maintained in good operating condition at Lessee's expense, in compliance with all requirements necessary to enforce all Equipment warranty rights, and returned to Lessor as provided in Section 14 in good operating condition (ordinary wear and tear excepted). If any Equipment shall become lost, stolen, destroyed or damaged beyond repair and not be covered by insurance for any reason, or in the event of any condemnation, confiscation, seizure or expropriation of such item, Lessee shall immediately pay to Lessor the value of such item calculated by discounting to present value the aggregate of all unpaid amounts due or to become due as Rents or otherwise (including the purchase option amount or the estimated in-place fair market value of the item at the end of the Lease Term if no purchase option amount is specified) with respect to such item at 6% per annum, at which time Lessor will transfer to Lessee, without recourse or warranty, all of Lessor's right, title and interest, if any, in such Equipment.

7. **Alterations.** Lessee shall, at its expense, make such alterations to Equipment during the Lease Term as may be required by applicable legal and regulatory requirements. Lessee may make alterations, additions or improvements to Equipment provided such alterations, additions or improvements shall not materially decrease the value of Equipment or impair its utility. Any alteration, addition or improvement shall be at Lessee's expense and shall belong to and become the property of Lessor, subject to the terms of this Lease during the Lease Term of the related Equipment. Lessee may remove any such alteration, addition or improvement at the expiration of the Lease Term of such Equipment, provided Lessee shall repair any damage to Equipment or the premises where located resulting from or occasioned by such removal and provided any such removal shall not render Equipment incapable of use or operation for the purposes for which such Equipment was intended.

8. **Insurance.** As and from the earlier of the date upon which Lessor pays any part of the cost of Equipment or acquires ownership of or Lessee's right to use Equipment or assumes risk, responsibility and liability therefor and thereafter until all of Lessee's obligations under the related Schedule have been performed in full, Lessee shall at its sole expense:

(a)    insure Equipment against "all risks" of physical loss or damage, including without limitation loss by fire (including extended coverage), theft, collision and such other risks of loss as are customarily covered by insurance on the type of Equipment leased hereunder by prudent operators of businesses similar to that in which Lessee is engaged, in such amounts, in such form and with such insurers as shall be satisfactory to Lessor, but in no event shall such insurance be less than the full replacement value of Equipment; and

(b)    maintain public liability and property damage insurance in respect of the use, operation and possession of Equipment and the ownership thereof by Lessor with insurers satisfactory to Lessor in such form and with such limits of liability as Lessor may from time to time reasonably require.

Each insurance policy will name Lessor (and if Lessor requests at any time, any successor, assignee or secured party of Lessor) as loss payee for physical damage insurance and as additional insured for liability insurance, and shall contain a clause requiring the insurer to give Lessor at least 30 days' prior written notice of any alteration in the terms of such policy or of the cancellation thereof. At Lessor's request, Lessee shall furnish to Lessor a certificate or certificates of insurance or other evidence satisfactory to Lessor that such coverage is in effect, provided, however, that Lessor shall be under no duty to either ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Lessee will promptly notify Lessor of the occurrence of an event of loss and, at its expense, make all proofs of loss and take all other steps necessary to recover insurance benefits unless advised in writing by Lessor that Lessor desires so to do at Lessee's expense. Proceeds of insurance shall at the option of Lessor be disbursed by Lessor against satisfactory invoices for repair or replacement of Equipment, provided this Lease is not then in default, or be retained by Lessor for application against Lessee's obligations hereunder, and if the proceeds received are less than the present value of Equipment lost, as determined pursuant to Section 6, Lessee shall pay to Lessor the amount of such deficiency. The total or partial loss of Equipment or its use or possession shall not relieve Lessee from its obligations and liabilities hereunder.

1

wnij

(Rev. 7/98)

(c)    Lessee is a corporation duly incorporated and validly existing in good standing under the laws of the jurisdiction of its incorporation, and has the corporate power to enter into this Agreement, each Schedule and all certificates and other documents required hereby or referred to herein;

(b)    this Agreement and each Schedule has been duly authorized by all necessary corporate action on the part of Lessee, has been duly executed and delivered on its behalf by its proper officers duly authorized in that regard, and constitutes the legal, valid and binding agreement of Lessee, enforceable against it in accordance with its terms (subject to applicable bankruptcy and other similar laws);

(c)    the execution, delivery, observance and performance of this Agreement and each Schedule do not and will not result in the breach of, constitute a default under, contravene any provision of, or result in the creation of any lien on or in any property or assets of Lessee pursuant to any of Lessee's outstanding shares or debt instruments or any agreement, indenture or other instrument to which Lessee is a party or by which Lessee or any of its property or assets may be bound or affected;

(d)    there is no action, suit or proceeding pending or, to the knowledge of Lessee, threatened in any court or tribunal or before any competent authority against Lessee or any of its property or assets which, in the reasonable and bona fide opinion of Lessee, may have a material adverse effect on the financial condition or business of Lessee; and

(e)    the financial statements and other information furnished and to be furnished to Lessor are and will be true and correct.

**10.   Warranties and Exclusion of Warranties.** Until such time as a Default shall have occurred hereunder, Lessor assigns to Lessee the benefit of any manufacturers' warranties or guarantees. LESSEE ACKNOWLEDGES THAT LESSOR DID NOT SELECT, MANUFACTURE OR SUPPLY EQUIPMENT. LESSEE FURTHER ACKNOWLEDGES THAT LESSOR LEASES EQUIPMENT AS-IS AND MAKES NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY. LESSEE HEREBY WAIVES ANY CLAIM (INCLUDING ANY CLAIM BASED ON STRICT OR ABSOLUTE LIABILITY IN TORT) IT MIGHT HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGE) OR EXPENSE CAUSED BY EQUIPMENT. LESSEE ACKNOWLEDGES THAT IT HAS MADE THE SELECTION OF EQUIPMENT BASED UPON ITS OWN JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE ON STATEMENTS MADE BY LESSOR OR ITS AGENTS. LESSEE FURTHER AGREES THAT THIS LEASE AGREEMENT SHALL BE DEEMED TO BE, WHETHER OR NOT THE TERMS HEREOF WOULD OTHERWISE BE SUBJECT THERETO, A FINANCE LEASE AS DEFINED IN THE CALIFORNIA COMMERCIAL CODE. Lessee hereby releases and forever discharges Lessor from any and all actions, claims, demands, costs, expenses, set-offs, abatements and compensation whatsoever, in connection with the foregoing. Upon Lessee's execution of a Schedule, Lessor shall be deemed to have fully performed and discharged all its obligations hereunder with respect to the related Equipment by providing Lessee with a possessory interest therein.

**11.   Default.** It shall be a default hereunder ("Default") if:

(a)    Lessee fails to pay any Rent or other amounts payable under a Schedule or hereunder and such failure shall have continued for 10 days;

(b)    Lessee fails or defaults in the due performance of any other obligation or provision of a Schedule or hereunder and such failure or default shall have continued for 10 days after notice from Lessor;

(c)    Lessee becomes insolvent or bankrupt, admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Lessee applies for or consents to the appointment of any receiver, trustee or similar officer for it or for all or any substantial part of its property; or such receiver, trustee or similar officer is appointed without the consent of Lessee; or Lessee institutes any bankruptcy, insolvency, reorganization, moratorium, arrangement, readjustment of debt, dissolution, liquidation or similar proceeding relating to it under the laws of any jurisdiction, or any such proceeding is instituted against Lessee and is not dismissed within 30 days; or any judgment, writ, warrant or attachment or execution of similar process is issued or levied against a substantial part of Lessee's property and remains unsatisfied for 30 days;

(d)    Lessee has misrepresented any representation, warranty or covenant made by Lessee to Lessor in connection with entering into this Agreement, any Schedule or any document or agreement in connection herewith, or any such representation, warranty or covenant is untrue or incorrect;

(e)    Lessee dissolves or otherwise terminates its corporate existence, or consolidates with or merges with or into any entity, or sells, leases or otherwise transfers all or substantially all of its assets or stock to any entity, or incurs a substantial amount of indebtedness other than in the ordinary course of its business, or engages in a leveraged buy-out or any other form of corporate reorganization, UNLESS in each case and before the event in question, either (i) Lessor confirms in writing that in its good faith opinion Lessee's financial condition and credit standing will not be impaired by the event, or (ii) Lessees obligations under each Schedule are assumed or guaranteed in a manner reasonably satisfactory to Lessor by an entity having in Lessor's good faith opinion at least as good financial condition and credit standing as those of Lessee immediately before the event;

(f)    Lessee does or permits to occur any act which may in the reasonable opinion of Lessor materially lessen the value of Equipment or Lessor's interest therein or increase the risk thereto; or

(g)    Lessee is in default under any other lease, contract, agreement or

**12.   Remedies.**

(a)    Upon Default Lessor may:

(i)    require Lessee to return any and all Equipment as provided in Section 14;

(ii)    without further notice, take possession of Equipment ("Repossession") and for such purpose Lessee hereby grants Lessor the right to enter the premises at the Equipment' location for the purpose of Repossession and waives claims for any damages, whether to property or otherwise, arising out of a Repossession;

(iii)    terminate this Lease Agreement and any Schedule;

(iv)    without terminating or being deemed to have terminated this Lease Agreement or any Schedule, as agent and attorney for Lessee sell or lease Equipment upon such terms as Lessor deems advisable ("Disposition"); or

(v)    in addition to any other right or remedy Lessor may have at law or in equity, demand as a genuine pre-estimate of liquidated damages for loss of bargain and not as a penalty, the then present value of all the unpaid and future Rent together with any other amounts owed under the applicable Schedule or hereunder, and (if Equipment is not returned to or repossessed by Lessor) the estimated in-place fair market value of Equipment at the end of the Lease Term (calculated by discounting such amounts at the rate of 6% per annum).

(b)    Lessee will pay all costs arising or incurred by Lessor as a result of Default, including reasonable legal fees and costs related to the Repossession, re-conditioning and Disposition of Equipment. Such costs will be deducted from the proceeds of any Disposition. In the event an amount in excess of the amount described in clause 12(a)(v) is received by Lessor, after costs, from the exercise of its remedies under Section 12(a), Lessor shall promptly pay to Lessee any such excess.

(c)    Lessee will pay Lessor interest at a rate equal to the lesser of 1-1/2% per month or the highest rate permitted by applicable law on all sums not paid by Lessee to Lessor when due and owing under the provisions of any Schedule or hereunder (the "Overdue Rate"). Such interest shall be due and payable monthly on the same days as provided for the payment of Rent so long as payment of any monies due and payable hereunder is in arrears.

(d)    All rights of Lessor are cumulative and not alternative and may be exercised by Lessor separately or together, in any order or combination.

**13.   Ownership; Personal Property; Labels.** Title to the Equipment is and shall remain in Lessor. During the Lease Term, Equipment shall be and remain movable, personal and chattel property and Lessee agrees to take all action necessary or reasonably requested by Lessor to ensure that Equipment shall be and remain personal property. Lessor shall not interfere with Lessee's right to possession and quiet enjoyment of Equipment during the Lease Term provided Lessee performs its obligations hereunder and under any Schedule pursuant to the terms and conditions hereunder and thereunder. Lessor may require plates, labels, or other markings to be affixed to or placed prominently upon Equipment indicating Lessor as the owner. To the extent this Agreement is determined to constitute a lease intended as security, Lessee grants Lessor a security interest in the Equipment and all replacements, substitutions, and accessories thereto as well as all proceeds thereof. Lessee shall, at its expense and upon Lessor's demand, promptly execute, acknowledge, deliver any and all further documents and take any and all other actions reasonably requested by Lessor from time to time, for the purpose of fully effectuating the intent and purposes of each Schedule, and to protect the interests of Lessor, its successors and assigns. Lessor may file a copy of this Lease Agreement in lieu of a financing statement.

**14.   Return.** At the expiration of the Initial Lease Term or earlier termination of each Schedule, provided Lessee has not exercised any purchase or renewal option in the Schedule, Lessee agrees to return all related Equipment to Lessor at a place within the continental United States reasonably designated by Lessor.

**15.   Indemnification.** Lessee shall be responsible for, and shall indemnify and save Lessor and its assignees harmless from and against all losses, claims, costs, expenses, damages, actions, liabilities, personal injuries, including without limitation attorneys' fees, in connection with, and arising from, this Agreement and/or any Schedule, Equipment, the manufacture, acquisition, possession, use, maintenance, condition, return or operation of Equipment, provided that this indemnity shall not extend to any loss caused solely by the gross negligence or willful misconduct of Lessor. Lessee shall give Lessor prompt notice of any occurrence, event or condition in connection with which Lessor may be entitled to indemnification hereunder. The indemnity herein shall survive termination of this Agreement.

**16.   Encumbrances.** Lessee shall, at Lessee's expense, keep Equipment free and clear of liens, security interests, attachments, seizures and encumbrances of any kind (except those arising hereunder or solely through the acts of Lessor).

**17.   Remedying Defaults.** If Lessee shall fail to perform or comply with any of Lessee's obligations hereunder and/or under a Schedule, Lessor in its discretion may do all such reasonable acts and make all such reasonable disbursements as may be necessary to cure such Default and any disbursements so made shall be payable by Lessee on demand, together with interest at the Overdue Rate from the date of disbursement by Lessor to the date of payment by Lessee.

18. **Notices.** Notices with respect hereto will be given in the sole personally delivered to an officer of the recipient party or by prepaid receipted del. addressed to such party at its address set forth above or such other address as it may in writing direct. Notice shall be deemed effective upon dispatch.

19. **Assignments.**

    (a)    This Agreement, including any Schedule, is not assignable by Lessee nor may Lessee assign or sublet Equipment without the consent of Lessor. Any attempted assignment or subletting without Lessor's consent shall be void and of no force and effect.

    (b)    Lessor may at any time without notice to Lessee, but subject to the rights of Lessee hereunder, transfer or assign this Agreement or any Schedule or any Equipment or any Rent or other monies and benefits due or to become due hereunder.

20. **Survival.** All of the representations, warranties, covenants and agreements of Lessee contained in this Agreement and each Schedule shall survive the expiration or earlier termination of such Schedule and the Lease Term of Equipment leased thereunder until all obligations of Lessee under the Schedule(s) and this Agreement have been performed in full.

21. **Governing Law; Jurisdiction; Waiver of Jury Trial.** THIS AGREEMENT AND EACH SCHEDULE SHALL BE GOVERNED IN ALL RESPECTS BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE WHERE LESSOR'S PRINCIPAL PLACE OF BUSINESS IS LOCATED. LESSEE IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED THEREIN, AND WAIVES TO THE FULLEST EXTENT ALLOWED BY LAW ANY OBJECTION TO VENUE IN SUCH COURT, AND FURTHER WAIVES ANY RIGHT TO A TRIAL BY JURY. HOWEVER, IN THE EVENT THAT THIS AGREEMENT OR ANY SCHEDULE IS ASSIGNED BY LESSOR, LESSEE AGREES THAT SUCH SCHEDULE (AND FOR PURPOSES THEREOF, THIS AGREEMENT) SHALL BE INTERPRETED UNDER THE SUBSTANTIVE LAWS OF THE STATE OF ILLINOIS WITHOUT REGARD TO SUCH STATE'S CHOICE OF LAW RULES OR PRINCIPLES. MOREOVER, LESSEE SUBMITS TO THE PERSONAL JURISDICTION OF THE COURTS OF SUCH STATE AND WAIVES ANY RIGHT TO CLAIM THAT SUCH FORUM IS INCONVENIENT OR IMPROPER.

    (a)    . Agreement shall be binding upon and inure to the benefit of Lessor and its successors and assigns and shall be binding upon Lessee and the heirs, executors, administrators, successors and permitted assigns and sublessees of Lessee.

    (b)    No term, condition or provision of this Agreement will be waived or deemed to have been waived by Lessor except in writing.

    (c)    If more than one person, firm or corporation executes this Agreement as Lessee, their respective liabilities hereunder will be both joint and several, but Lessor will be fully discharged in respect of any obligation hereunder upon performance of that obligation to any one of them.

    (d)    Lessee shall furnish its financial statements to Lessor within 120 days after the close of each fiscal year of Lessee, prepared in accordance with generally accepted accounting principles consistently applied. Lessee shall also furnish such other financial information as Lessor may from time to time reasonably request.

    (e)    Any term, condition or provision of this Agreement which is or is deemed to be void, prohibited or unenforceable in any jurisdiction is, as to such jurisdiction, severable herefrom and ineffective to the extent of such avoidance, prohibition or unenforceability, without invalidating the remaining terms, conditions and provisions hereof.

    (f)    To the extent permitted by applicable law, Lessee waives any and all rights and remedies conferred upon Lessee under Uniform Commercial Code Sections 2A-303 and 2A-508 through 2A-522.

    (g)    "This Lease Agreement", "Lease Agreement", "this Agreement", "this lease", "hereto", "herein", "hereof", "hereby", "hereunder" and similar expressions refer to this Master Lease Agreement and include all Schedules.

    (h)    Lessee acknowledges receipt of a copy of this Agreement.

    (i)    This Agreement and each Schedule may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original (except that to the extent, if any, this Agreement or any Schedule constitutes chattel paper, no security interest therein may be created except through the transfer or possession of the original counterpart, which shall be identified by Lessor), but all such counterparts taken together shall constitute one and the same instrument.

    (j)    This Agreement and Schedules hereto constitute the entire agreement between Lessor and Lessee and may be amended only in writing signed by Lessor and Lessee. By initialing this provision, Lessee agrees to be bound by the terms of this Agreement and, to the extent applicable, that the provision concerning a separately signed document pursuant to Uniform Commercial Code Section 2A-208 has been complied with.

_____
Lessee's Initials

---

**AMERICAN LEASING ALLIANCE, LLC**
**d/b/a Graphic Arts Capital, LLC**
"Lessor"

BY: _____

NAME:     James A. Brustad

TITLE:     Vice-President

DATE:     11-6-98

**FLASH 1 HOUR FOTO, INC.**
"Lessee"

BY: _____

NAME:     Niranjan Patel

TITLE:     Vice-President

DATE:     11-6-98

[generic lessor form]





**COUNTERPART NO. <u>1</u> OF <u>3</u> . POSSESSION AND TRANSFER OF COUNTERPART NO. 1 ONLY IS EFFECTIVE TO TRANSFER OWNERSHIP OF OR CREATE A SECURITY INTEREST IN THIS SCHEDULE.**

## LEASE SCHEDULE
## NO. <u>001</u>

INCORPORATING THE TERMS AND CONDITIONS OF MASTER LEASE AGREEMENT NO.: <u>GACC121598</u> ("Master Lease Agreement") DATED <u>11/6</u> , 19<u>98</u> BETWEEN AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC ("Lessor") AND <u>FLASH 1 HOUR FOTO, INC.</u> ("Lessee").

Lessor hereby agrees to lease and/or make available to Lessee upon and subject to the terms, conditions and provisions set forth in this Lease Schedule ("Schedule" and in the above referenced Master Lease Agreement, the Equipment described or identified below (any term not defined herein shall have the meaning ascribed to it in the Master Lease Agreement):

### EQUIPMENT DESCRIPTION

| Equipment | Acquisition Amount | Supplier |
|---|---|---|
| One (1) Newly Manufactured Indigo E-Print Pro Digital Offset Press | $228,000.00 | Indigo America, Inc.<br>400 Unicorn Park Drive<br>Woburn, MA 01801 |

Aggregate Acquisition Amount: <u>$228,000.00</u>

LOCATION OF EQUIPMENT: 1720 North Rand Road, Palatine, IL 60074

1. **TERM AND RENT PROVISIONS**

   Initial Lease Term: <u>60</u> months          Payment Period (check one):  ■monthly
                                                                               quarterly
   Lease Commencement Date: <u>12/15/98</u>                                    annually

   Lease Rate Factor: <u>.02068566</u>          $1.00 Purchase Option

   **TOTAL PERIODIC RENT SCHEDULE** (all installments of Rent are subject to applicable taxes):

   <u>60</u> installments of Rent at $ <u>4,716.33</u> each

   Initial Payment of $4,716.33 covering the First Monthly Rental Payment.

   *Plus, if applicable, freight, taxes, insurance and maintenance which shall be paid by Lessee in accordance with the terms of the Lease and this Schedule.

2. **PURCHASE OPTION:** At the expiration of the Initial Lease Term above, provided no event of Default has occurred and is continuing, Lessee shall have the right to acquire the Equipment for $1.00. On payment of the option price, plus sales and other taxes, if applicable, the Equipment will be sold to Lessee in its then condition, quantity and location, on an "as is, where is" basis, free and clear of liens, charges or encumbrances created by Lessor, without further warranties or representations whatsoever, expressed or implied, on the part of Lessor.

3. **RENT ADJUSTMENT.** The Lease Rate Factor quote is based upon 60 month Treasury Notes. If at Lease Commencement, Treasury Notes with that same maturity are either less than or greater than the rate quoted to Lessee by more than 25 basis points, then the Lease Rate Factor will be adjusted to reflect the charge. For each 1/4 of 1% increase or decrease which occurs in the rate upon which such quote was based, the Lease Rate Factor will be adjusted. Lessor is hereby authorized to make such adjustments as may be necessary upon receipt of a Certificate of Acceptance executed by Lessee.

4. **AGREEMENT.** This Schedule shall be deemed to take effect and incorporate the terms and conditions of the Master Lease Agreement pursuant to Section 1 thereof on the date Lessor receives a Certificate of Acceptance duly executed by Lessee and an invoice from the vendor of the Equipment which is the subject of such Certificate with such invoice to be in Lessor's name. Lessee hereby authorizes Lessor to insert as the Lease Commencement Date the date Lessor receives an executed Certificate of Acceptance and, where applicable, the serial number of the Equipment. Lessee hereby agrees that the Equipment shall not be removed from the above location without prior written notice to Lessor.

5. **TAXES.** Lessee alone is responsible for filing all property tax returns with respect to the Equipment and directly paying all such taxes. In the event that Lessee fails or refuses to pay same, Lessor may pay such taxes and Lessee shall reimburse Lessor with interest at the lesser of 1½ percent per month or the highest rate permitted by law.

6. **ADDITIONAL PROVISIONS:**

AMERICAN LEASING ALLIANCE, LLC
d/b/a Graphic Arts Capital, LLC
"Lessor"

BY:

NAME:    James A. Brustad

TITLE:    Vice-President

DATE:    11/6/98

FLASH 1 HOUR FOTO, INC.
"Lessee"

BY:

NAME:    Niranjan Patel

TITLE:    V. President

DATE:    11/6/98



[$1.00 Option]          (Rev. 7/98)

# Exhibit B





Lease No. _GACC121598-001_

# PURCHASE AGREEMEENT ASSIGNMEENT

This Purchase Agreement Assignment, dated ____11/6_____. 1998, is between _____
_____FLASH 1 HOUR FOTO, INC._____, an ___Illinois_____corporation ("Assignor") and
AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC ("Assignee").

WHEREAS, Assignor has entered into purchase agreements or purchase orders, dated ___
_____October 29_____, 1998_, ("Purchase Agreement") between Assignor and _____
_____INDIGO AMERICA, INC._____ ("Vendor"), a true, correct and complete copy of
which Purchase Agreement is attached hereto, providing for the sale to Assignor of various
equipment, as more fully described on Schedule A attached hereto and made a part hereof (the
"Equipment").

WHEREAS, Assignor desires that Assignee acquire the Equipment and lease the Equipment to
Assignor pursuant to the terms of a Master Lease No. __GACC121598_____ Equipment Schedule
No. __001____ (the "Lease").

NOW, THEREFORE, the parties hereto agree as follows:

1.    Assignor does hereby sell assign, transfer and set unto Assignee all of Assignor's right
title and interest in, under and to the Purchase Agreement and in and to the Equipment and all
software licenses related thereto and subject to the representations and warranties and terms and
conditions set forth herein Assignee hereby accepts such assignment

2.    Assignor may not amend, modify, rescind or terminate the purchase agreement without
the prior written consent of Assignee, which consent shall not be unreasonably withheld.

3 .    It is agreed that anything herein contained to the contrary notwithstanding: (a) Assignor
shall at all times remain liable to Vendor under the Purchase Agreement to perform all the duties
and obligations of the purchaser thereunder to the same extent as if this Agreement had not been
executed, and Assignee does not assume and shall not be obligated to perform any of these duties
and obligations, except as set forth in (c) below; (b) the exercise by Assignee of any of the rights
assigned hereunder shall not release Assignor from its duties or obligations to Vendor under the
Purchase Agreement; (c) the Assignee accepts only the obligation to purchase the Equipment and
any software licenses related thereto for an amount equal to the purchase price as described in the
Purchase Agreement; and (d) the obligation of the Assignee to purchase the Equipment is
conditioned upon acceptance of the Equipment by the Assignor under the terms of the Lease.

4.      Assignor agrees at any time and from time to time upon written request of Assignee to promptly and duly execute and deliver any and all such further instruments and documents and take such other actions as Assignee may reasonably request in order to obtain the full benefits of this Agreement and of the rights and powers granted herein.

5 .      Assignor does hereby represent and warrant that: (a) the Purchase Agreement attached hereto is a true, correct and complete original or duplicate copy thereof and that no amendment or modification thereto has occurred; (b) the Purchase Agreement is in full force and effect and enforceable in accordance with its terms and Assignor is not in default thereunder; (c) Assignor has the legal right to enter into this Agreement; (d) the Purchase Agreement is free from all claims, security interests, liens and encumbrances, except for the interest being conveyed hereunder and the interest of Assignor therein.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed on or as of the day and year first above written.

FLASH 1 HOUR FOTO, INC.

Assignor

By: _____

Title: __Vice President__

AMERICAN LEASING ALLIANCE, LLC
d/b/a Graphic Arts Capital, LLC
Assignee

By: _____

Title:    Vice-President

## CONSENT AND ACKNOWLEDGEMENT OF PURCHASE AGREEMENT ASSIGNMENT

The undersigned hereby consents to the attached Purchase Agreement Assignment between Assignor and Assignee and consents to and accepts said Assignment on and subject to the terms and conditions therein set forth.  The undersigned hereby represents and warrants that the Purchase Agreement attached thereto is a true, complete and correct copy of the Purchase Agreement and that the Purchase Agreement has not been amended or modified and will not be modified or amended without the prior written consent of Assignee.  The undersigned hereby further acknowledges that the Assignee intends to rely on the foregoing representations and warranties.

INDIGO AMERICA, INC.

Vendor

By: _____

Title: _____

Date: _____

# Exhibit C

FOR VALUE RECEIVED, and in consideration of, and in order to induce AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC (herein called "Lessor"), to enter into a certain Master Lease Agreement (Lease No. GACC121598____) dated ____ ____ 11/6___, 19 98 (herein called the "Lease"), with ___ FLASH 1 HOUR FOTO, INC. _____ (herein called "Lessee"), providing for the lease of certain equipment now leased or hereafter to be leased under the Lease and any Equipment Schedule(s) executed pursuant thereto (herein called the "Equipment"), we, the undersigned, do hereby jointly and severally, unconditionally guarantee to Lessor the full and prompt performance by Lessee of all obligations which Lessee presently or hereafter may have to Lessor under the Lease and any Equipment Schedule(s) executed pursuant thereto, and under any other agreement related thereto, including but not limited to, agreements pursuant to which Lessor is called upon to make progress payments to equipment vendors, and the payment when due of all rent and all other sums presently or hereafter owing by Lessee to Lessor thereunder, and agree to indemnify Lessor against any losses Lessor may sustain and expenses it may incur as a result of any default by Lessee under the Lease and/or as a result of the enforcement or attempted enforcement by Lessor of any of its rights against us hereunder. We hereby expressly waive all defenses which might constitute a legal or equitable discharge of a surety or guarantor, and agree that this Guaranty shall be valid and unconditionally binding upon us regardless of (i) reorganization, merger or consolidation of Lessee into or with another entity, corporate or otherwise, or the sale or other disposition of all or substantially all of the capital stock, business or assets of Lessee to any other person or party, or (ii) the death or dissolution of Lessee, or (iii) the voluntary or involuntary bankruptcy (including a reorganization in bankruptcy) of Lessee, or (iv) the granting by Lessor of any indulgences to Lessee, or (v) the assertion by Lessor against Lessee of any of Lessor's rights and remedies provided for under the Lease or existing in its favor in law, equity or bankruptcy, or (vi) the release of Lessee from any of Lessee's obligations under the Lease or under any other agreements or by operation of law or otherwise, or (vii) any invalidity, irregularity, defect or unenforceability of any provision of the Lease or any other agreements, or (viii) any defect in Lessor's title to any of the Equipment. We hereby waive notice of and consent to the leasing of all Equipment now or hereafter leased under the Lease, and any Equipment Schedule(s) executed pursuant thereto, to any subleasing or other use of any Equipment permitted by Lessor (regardless of whom any such sublessee or user may be), to all of the provisions of the Lease and any said Equipment Schedule(s) and to any amendments thereof, and to any actions taken thereunder, and to the execution by Lessee of the foregoing documents and of any other agreements, documents and instruments executed by Lessee in connection therewith. We further waive notice of Lessor's acceptance of this Guaranty, of any default and nonpayment and/or nonperformance by Lessee under the Lease, of presentment, protest and demand, and of all other matters to which we might otherwise be entitled. We further agree that this Guaranty shall remain and continue in full force and effect notwithstanding any renewal, modification or extension of the Lease or the term of any Equipment, and hereby expressly waive all notice of and consent to any such renewal, modification or extension and to the execution by Lessee of any documents pertaining thereto. We further agree that our liability under this Guaranty shall be absolute, primary and direct, joint and several, and that Lessor shall not be required to pursue any right or remedy it may have against Lessee under the Lease or otherwise (and shall not be required to first commence any action or obtain any judgment against Lessee) before enforcing this Guaranty against us, and that we will, upon demand, pay Lessor the amount of all rents and all other sums, the payment of which, by Lessee, is in default under the Lease, or any other agreement related thereto, and will, upon demand, perform all other obligations of Lessee, the performance of which is in default under the Lease.

We hereby agree that the failure of Lessor to insist in any one or more instances upon a strict performance or observance of any of the terms, provisions or covenants of the Lease or any other agreements, or to exercise any of its rights thereunder, shall not be construed or deemed to be a waiver or relinquishment for the future of any such terms, provisions, covenants or rights, but such terms, provisions, covenants and rights shall continue and remain in full force and effect. Receipt by Lessor of any rent or other sums payable under the Lease with knowledge that Lessee has breached any of the terms, provisions or covenants of the Lease shall not be deemed to be a waiver by Lessor of such breach.

Any married person who signs this Guaranty hereby expressly agrees that recourse may be had against his or her separate property for all obligations under this Guaranty.

No assignment or other transfer by Lessor or Lessee of any interest, right or obligation under the Lease and any Equipment Schedule executed pursuant thereto or assumption by any third party of the obligations of Lessee under the Lease and any Equipment Schedule attached thereto shall extinguish or diminish the unconditional, absolute, primary and direct liability of the undersigned under this Guaranty. The undersigned hereby consents to and waives all notice of any such assignment, transfer or assumption. If this Guaranty is executed by more than one person, the release of any one guarantor shall not terminate this Guaranty as to any other guarantor.

Any assignee of Lessor shall have all of the rights of Lessor hereunder and may enforce this Guaranty against us with the same force and effect as if this Guaranty were given to such assignee in this first instance. This Guaranty shall inure to the benefit of Lessor, and successors and assigns, and shall be binding upon us and our heirs, executors, administrators, personal representatives, successors and assigns.

This Guaranty shall be governed as to validity, interpretation, effect and in all other respects by the laws and decisions of the State of Illinois. The undersigned do hereby submit to the jurisdiction of any court (federal, state or local) having situs within the State of Illinois, expressly waiving personal service of process and consent to service by certified or registered mail, return receipt requested,

directed to the last known address of the undersigned guarantor, which service shall be deemed completed ten (10) days after the date of mailing thereof.

THE UNDERSIGNED GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY AGREES THAT THIS GUARANTY AND THE OBLIGATIONS PROVIDED FOR HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS AND THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THEREOF SHALL BE GOVERNED BY THE LAWS OF THE STATE OF ILLINOIS. THE UNDERSIGNED GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY CONSENTS TO THE JURISDICTION AND VENUE OF ALL COURTS IN SAID STATE. THE UNDERSIGNED GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO PERSONAL SERVICE OF PROCESS IN ANY ACTION BROUGHT IN CONNECTION WITH OR ARISING OUT OF THIS GUARANTY AND CONSENTS TO SERVICE OF PROCESS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE LAST KNOWN ADDRESS OF THE UNDERSIGNED GUARANTOR, WHICH SERVICE SHALL BE DEEMED COMPLETED TEN (10) DAYS AFTER THE DATE OF MAILING THEREOF. THE UNDERSIGNED GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION BROUGHT IN CONNECTION WITH OR ARISING OUT OF THIS GUARANTY IN SUCH COURT IS IN AN IMPROPER VENUE OR SUCH ACTION SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM. THE UNDERSIGNED GUARANTOR HEREBY KNOWINGLY, WILLINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT IN CONNECTION WITH OR ARISING OUT OF THIS GUARANTY.

IN WITNESS WHEREOF, the undersigned have executed this Guaranty this _____6th_____ day of _____November_____, 1998.

NIRANJAN PATEL

_____
SIGNATURE OF INDIVIDUAL

KAUSHALYA PATEL

_____
SIGNATURE OF INDIVIDUAL

### ACKNOWLEDGMENT

STATE OF _____Illinois_____ )
                                                  )ss:
COUNTY OF_____Cook_____ )

I,_____James Brustad_____ a Notary Public in and for said State and County, duly commissioned and acting, do hereby certify that on this ____6th____ day of ____November____, 19_98_ before me personally appeared _____ _____NIRANJAN PATEL_____, of _____3 Pentwater Drive, Barrington, IL 60010_____ (Street, City, County, State) to me personally known, who, being by me duly sworn, stated and acknowledged on oath that he executed the foregoing Guaranty as Guarantor thereunder, and the execution was the free and voluntary act and deed of the aforesaid, for the use, purposes and consideration therein mentioned and set forth.

WITNESS my hand and seal as such Notary Public the day and year in this certificate above written.

My Commission Expires:
_7-15-2002_

OFFICIAL SEAL
JAMES A BRUSTAD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/15/02

_____
NOTARY PUBLIC

### ACKNOWLEDGMENT

STATE OF _____Illinois_____ )
                                                  )ss:
COUNTY OF_____Cook_____ )

I,_____James Brustad_____ a Notary Public in and for said State and County, duly commissioned and acting, do hereby certify that on this ____6th____ day of ____November____, 19_98_ before me personally appeared _____ _____KAUSHALYA PATEL_____, of _____3 Pentwater Drive, Barrington, IL 60010_____ (Street, City, County, State) to me personally known, who, being by me duly sworn, stated and acknowledged on oath that he executed the foregoing Guaranty as Guarantor thereunder, and the execution was the free and voluntary act and deed of the aforesaid, for the use, purposes and consideration therein mentioned and set forth.

WITNESS my hand and seal as such Notary Public the day and year in this certificate above written.

My Commission Expires:
_7-15-2002_

OFFICIAL SEAL
JAMES A BRUSTAD
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/15/02

_____
NOTARY PUBLIC

# Exhibit D

# ASSIGNMENT WITHOUT RECOURSE (LEASE)

**NEWCOURT FINANCIAL USA INC.**
Bank One Tower, 111 Monument Circle, Suite 2700, Indianapolis, Indiana 46204-5187

Reference is hereby made to that certain Master Lease Agreement dated _____November 6____, 1998 (the "Lease") between AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC ("Lessor") and __FLASH 1 HOUR FOTO, INC.____ ("Lessee"), and the Lease Schedule No. _001_ dated ___ November 6__, 1998, with aggregate rentals outstanding of $278,263.47 _____ payable in _____fifty-nine (59)__ installments of $_____4,716.33_____with the next payment due January 15, 1999 _____(the "Rent Payments").

FOR VALUE RECEIVED, Lessor hereby sells, assigns and transfers. except as provided for below, to Newcourt Financial USA Inc. ("Newcourt"), its successors and assigns WITHOUT RECOURSE as to Lessee's ability to pay, the Lease and all of Lessor's interests in the equipment or collateral described therein (the "Equipment") and any and all guarantees that may have been issued in eanne0ion therewith and any additional security with respect thereto, including, without action, the right to called and receive any and sit Rent Payments due and to become due thereunder and to take any action under the Lease and with respect to the Equipment which the Lessor might otherwise take.

In order to induce Newcourt to purchase the Lease, Lessor warrants that: (i) a true, correct and complete copy of the Lease (and all other documentation and agreements relating thereto) is attached hereto as Exhibit A and the total payments paid or prepaid by Lessee to Lessor under the Lease through the date hereof is $_____4,716.33_____; (ii) such Lease is genuine and represents a valid lease obligation of a bona fide lessee to make the Rent Payments; (iii) the Lease and related documents covering the Equipment and are the entire agreement between Lessor and Lessee; (iv) all names, addresses. amounts, dates, signatures and other statements and facts contained therein are true and correct; (v) the Lease and any guarantees and other documents delivered herewith are valid and enforceable in accordance with their terms; (vi) Lessee has paid the security deposit or advance rentals, if any, as set forth in the Lease, and no part thereof has been loaned or paid directly or indirectly by Lessor; (vii) the Lease is not subject to cancellation or prepayment; (viii) the obligations of Lessee to make Rent Payments are absolute and unconditional and are not subject to setoffs, claims or other defenses of any kind; (ix) neither Lessor nor Lessee is in default under the Lease: (x) the Equipment has been delivered and accepted by Lessee; (xi) the Lease terms require Lessee to pay all taxes. except for Lessees federal or state net income taxes, assessments, licenses, and other charges (including, without limitation personal property taxes and sales, use and leasing taxes and penalties and interest on such taxes) imposed, levied or assessed on the ownership, possession, rental or use of the Equipment after delivery of the Equipment to Lessee ("Taxes"); (xii) Lessor has properly and timely filed or recorded a UCC-1 financing statement in order that Lessor has a first priority perfected security interest in the Equipment, and upon consummation of this Assignment, Newcourt shall have a first priority perfected security interest in the Equipment. or if the Equipment is a titled vehicle, Lessor has had Newcourt noted as the owner or first lien-holder on the certificate of title as required under all applicable filing and recording statutes; (xiii) Lessor was the owner of the Equipment at the time of this Assignment; (xiv) the Lease and the related documents are freely assignable; and (xv) this Assignment conveys good and marketable title to the Lease, the related documents, and the Equipment, free and clear of any other liens and encumbrances whatsoever (save the interests of the Lessee under the Lease).

Lessor covenants and agrees: (a) at any time prior to the expiration of the term of the Lease assigned hereunder, not to do anything that impairs the value of the Rent Payments or any of Newcourt's rights under the Lease or this Assignment; (b) to pay all Taxes which occur in connection with this assignment (except for Newcourt's federal or state net income taxes); and (c) to take, at its sole cost and expense, all

such further acts as may be reasonably requested by Newcourt in order to more fully evidence the transfer of the rights contemplated hereby.

In the event of any breach of any of the above warranties or covenants by Lessor, Lessor shall immediately upon Newcourt's demand, repurchase the Lease without Newcourt being first or thereafter required to proceed against Lessee or any other third party. The repurchase price for the Lease shall be payable in cash and be equal to the sum of: (a) accrued Rent Payments plus interest and late charges, as provided in the Lease, (b) all Rent Payments to become due under the Lease discounted to present value using a discount rate of six percent, (c) Newcourt's out-of-pocket costs and expenses of collection including Newcourt's reasonable attorney's fees and cost of enforcing its rights hereunder, (d) if the Lease contains a purchase option and title to such equipment has been transferred to Newcourt, the greater of (x) the present value of such purchase option calculated in the same manner as above and (y) the fair market value of Newcourt's residual interest in the equipment, and (e) Newcourt's other reasonable costs and expenses ("Repurchase Price"). Newcourt's liability hereby shall not be affected by any extensions of time for payment, renewals, other indulgences or variations of the term of the Lease granted by Newcourt to Lessee. Upon receipt of the Repurchase Price by Newcourt, Newcourt shall reassign to Lessor the Lease and all of its interest in the Equipment and all guarantees issued in accordance with the Lease and assigned to Newcourt hereunder, on an "AS IS" AND "WHERE IS" BASIS, WITHOUT RECOURSE, REPRESENTATION OR WARRANTY OF ANY KIND.

Lessor agrees that Newcourt may sign and endorse Lessors name upon any remittances received from Lessee pursuant to the provisions of the Lease. Newcourt may, without notice to Lessor and without affecting Lessors liability for a breach of any warranty hereunder, enter into any settlement, extension, forbearance or other variation in terms in connection with the Lease, or discharge or release the obligations of the Lessee or other persons, or the Equipment by operation of law or otherwise. Lessor waives any failure or delay by Newcourt in enforcing any right or remedy hereunder. Lessor shall not make any collections or repossessions under the Lease, nor accept returns or make substitutions of Equipment, except with Newcourt's written consent. This assignment includes all terms and conditions relating to purchase of the Lease by Newcourt and may not be modified or amended except by a duly executed written agreement signed by Lessor and Newcourt. Lessor waives notice of acceptance hereof, presentment, protest and demand, and notice of protest, demand, and dishonor of the Lease and any guarantees or other instruments issued in connection therewith. This Assignment shall be governed by the laws of the State of Illinois and any action by Newcourt may, at its option, be filed in the courts of such state. To such end, Lessor submits to the jurisdiction of the state and federal courts sitting in Illinois and to venue therein without relief on basis that same may be an inconvenient forum to Lessor. Moreover, to the fullest extent permitted by law and having consulted with or having had the opportunity to consult with counsel of their choice, LESSOR AND NEWCOURT EACH WAIVE THEIR RIGHT TO TRIAL BY JURY.

Newcourt may assign this Assignment in whole or in part to any person or entity and it may thereafter be reassigned without any restriction hereunder.

Dated: _____ December 15 _____, 19 ____ 98

AMERICAN LEASING ALLIANCE, LLC
d/b/a Graphic Arts Capital, LLC

By: _____

Printed: _____ James A. Brustad _____

Title: _____ Vice-President _____

# Exhibit E

December 15, 1998

Mr. Nick Patel
**FLASH 1 HOUR FOTO, INC.**
1720 North Rand Road
Palatine, IL 60067

NOTICE AND ACKNOWLEDGEMENT OF ASSIGNMENT

Dear Mr. Patel:

Graphic Arts Capital, LLC is pleased to provide you with copies of the executed Equipment Lease Number GACC121598 and the Lease Schedule -001 thereto.

We (as "Lessor") hereby notify you (as "Lessee") and direct that:

A. By a Lease Purchase Agreement and in accordance with its terms, we have assigned all of our rights and obligations under the Lease to NEWCOURT FINANCIAL USA, INC. (as "Assignee") as of _____ December 15, 1998 _____ (the "Rent Assignment Date").

B. Until further written notice to the contrary is received by you from Assignee, all lease rentals and any other payments due on and after the Rent Assignment Date under the Lease (the "Monies") shall be paid by the date due directly by you to Assignee at the following address:

_____ 303 East Wacker Drive _____
_____ Chicago, Illinois 60601 _____

ACKNOWLEDGMENT

Lessee acknowledges that:

(i) the initial term of the Lease is __60__ months, commencing on __December 15__, 1998 and ending on _____ November 15 __, 2003; (ii) the regular monthly rental is $__4,716.33__ , exclusive of applicable taxes and shall be due and payable on the __15th__ day of each month during the term beginning with any payments due as of the commencement date set forth in the Lease and there are __fifty-nine (59)__ consecutive monthly rentals in the above amount remaining, beginning with the payment due on __January 15__ , 1999; (iii) there are no additional agreements between Lessee and Lessor relating to the equipment ("Equipment") under the Lease; (iv) the Lease is in full force and effect; (v) the Equipment currently is in its possession and control at the location indicated on the lease or any lease schedule(s);

GRAPHIC ARTS CAPITAL LLC **GET AHEAD.**



Mr. Nick Patel
**FLASH 1 HOUR FOTO, INC.**
December 15, 1998
Page Two

(vi) there are no judgments, suits or proceedings, pending or threatened, against Lessee which would adversely affect its ability to make payments under the Lease; (vii) it is aware of no claim of any kind or nature in or to the Lease, the rents provided thereunder or the Equipment or of any lien thereon other than the interests of Lessee, Lessor and Assignee; (viii) it consents to the assignment herein by Lessor and will remit and deliver all Monies directly to Assignee at the address set forth above; (ix) it will deliver copies of all notices and other communications given to or made by Lessee pursuant to the Lease, to Assignee at the following address: 303 East Wacker Drive, Chicago, Illinois 60601; (x) it will not enter into any agreement amending, modifying or terminating the Lease without the prior written consent of Assignee; and (xi) it has not made with respect to Lessor, nor will it make with respect to Assignee, any claims, offsets, demands or defenses of any kind, nature or description with reference to any of Lessor's obligations under the Lease.

The parties hereto agree that in lieu of any covenant of quiet enjoyment that may be given on behalf of Assignee in the Lease, Assignee hereby covenants that so long as Lessee is not in default of any provisions of the Lease and has not breached any of its covenants or representations in this Notice and Acknowledgment, Assignee will no disturb the Lessee's quiet and peaceful possession of the Equipment or its unrestricted use thereof for its intended purposes.

If you should have any questions with regard to your lease or the assignment thereof, please do not hesitate to contact the undersigned at 847-458-0191.

Thank you for allowing Graphic Arts Capital, LLC the opportunity to be of service to your company and if their are any additional leasing or financing needs that you may have in the future, please allow us that opportunity as well.

Sincerely,

**GRAPHIC ARTS CAPITAL, LLC**
Lessor

James Brustad
Vice-President

CUSTOMER ACKNOWLEDGEMENT:
**FLASH 1 HOUR FOTO, INC.**
Lessee

By: _____

Date: _____12|15|98_____

ASSIGNEE ACKNOLWEDGMENT:
**NEWCOURT FINANCIAL USA, INC.**
Assignee

By: _____

Date: _____



# Exhibit F

Equipment Rental and Finance - US
1540 W. Fountainhead Parkway
Tempe, AZ 85282

Tel: 800 553-8778
P.O. Box 27248
Tempe, AZ 85285-7248
www.cit.com



**VIA FEDERAL EXPRESS**

August 16, 2002

Flash 1 Hour Foto, Inc.
Attention: Mr. Niranjan Patel
1720 North Rand Road
Palatine, IL 60074

Re: Lease #: 081-0010889-001

Dear Mr. Patel:

As of this date, our attempts to amicably resolve the past-due status of your account have been unsuccessful. Therefore, we are now finding it necessary to exercise certain remedies provided under the terms of the Agreement.

Accordingly, WE HEREBY DECLARE the Agreement to be in DEFAULT and DEMAND all current, future and past due obligations to become IMMEDIATELY DUE AND PAYABLE.

WE HEREBY ACCELERATE THE CONTRACT BALANCE OF $169,787.8 which includes all past due payments, current rents, future rents, plus late charges. Payment should be received within (7) days of this letter to avoid further action. Please review and submit balance.

The seriousness of this matter demands your immediate attention as your account is past due and in default. Please govern yourself accordingly, as you will be responsible for all legal expenses, if the balance remains unpaid.

Sincerely,

*Sean Robertson*

Sean Robertson
Portfolio Specialist

Phone: 1-800-553-8778, ext. 1412

Please submit Payment to:
CIT
P.O. BOX 91448
CHICAGO, IL 60693
(REFERENCE CONTRACT #)

CHECK BY PHONE: PLEASE CALL
800-553-8778 EXT. 1412

OVERNIGHT ADDRESS:
CIT FINANCIAL USA
1540 W. FOUNTAINHEAD PARKWAY
CHICAGO, IL 60693
(REFERENCE CONTRACT #)

# Exhibit G

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| FLASH 1 HOUR FOTO, INC.<br>15 East Golf Road<br>Arlington Heights, IL 60005<br>36-3117838 | AMERICAN LEASING ALLIANCE, LLC<br>1301 Pyott Road, Suite 103<br>Lake In The Hills, IL 60102 | UCU211710/98:03:0035:<br>20.00 Ck01<br>SOSIL 08:38 3938527 FS |

1. This financing statement covers the following types (or items) of property:

> One (1) Newly Manufactured Indigo E-Print Pro
>   Digital Offset Press
> One (1) Newly Manufactured Sienna FP5000 Digital
>   Color Imager/Processor

ASSIGNEE OF SECURED PARTY

NEWCOURT FINANCIAL
USA, INC.
303 East Wacker Drive
Chicago, IL 60601

"All of the goods and equipment now or hereafter leased by Lessor to Lessee under
Lease No._____ including but not limited to One (1) Newly Manufactured Indigo
E-Print Pro Digital Offset Press and One (1) Newly Manufactured Sienna FP5000 Digital
Color Imager/Processor and all accessions, additions, replacements, substitutions
thereto and therefore and all proceeds thereof." T

THIS EQUIPMENT IS LOCATED AT 1720 North Rand Road
                              Palatine, IL 60067

2. ☐ Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.
The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Date...........................................19.............

By: ...........................................................................
(Signature of Secured Party or Assignee of Record. Not Valid Until Signed.)

FILING OFFICER-ACKNOWLEDGEMENT

This form of financing statement is approved by the Secretary of State.

STANDARD FORM—UNIFORM COMMERCIAL CODE— FORM UCC-]– REV. 1 - 76

# Exhibit H

**d/b/a Graphic Arts Capital, L**
1301 Pyott Road, Suite 103
Lake In The Hills, IL 60102
**ph.847.458.0191    fx.847.458.0197**



# MASTER LEASE AGREEMENT
## NO. GACC121598

Lessee _____ FLASH 1 HOUR FOTO, INC. _____

Address _____ 15 East Golf Road, Arlington Heights, IL 60005 _____

This Master Lease Agreement ("Agreement"), including the terms and conditions on the reverse side hereof and any Schedule hereto, sets forth the entire Agreement between AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC, which maintains an office at 1301 Pyott Road, Suite 103, Lake In The Hills, IL 60102 ("Lessor"). No agreement or understanding shall be binding on either of the parties hereto unless in writing and executed by the parties hereto.

1. **Lease.** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the personal property (the "Equipment") described in the Lease Schedule(s) (the "Schedule") executed and to be executed by the parties hereto. Each Schedule shall constitute a separate lease of Equipment and the provisions hereof will be deemed to be a part thereof. This Agreement and all Schedules hereunder are non-cancellable.

2. **Performance by Lessor.** Lessor is not obligated to perform under this Agreement unless before the expiration of credit approval (i) Lessor receives from Lessee a fully signed and completed Agreement, Schedule and other such documents as Lessor may require, (ii) Lessor receives a Certificate of Acceptance evidencing that the Equipment has been delivered to and irrevocably accepted by Lessee for lease and/or use from Lessor, (iii) Lessor receives from vendor of the Equipment, or from Lessee, clear and unencumbered title to any Equipment, and (iv) there is no Default under Section 11. If Lessor has accepted a Purchase Agreement Assignment but the Lease does not commence within 30 days following such acceptance, Lessor may reassign such assignment to Lessee without recourse or warranty and Lessee will reimburse Lessor for all expense incurred, plus interest at the Overdue Rate in Section 12(c). For each Schedule, Lessee irrevocably authorizes Lessor to adjust the Equipment Acquisition Amount and Rent by no more than ten percent (10%) to account for actual out of pocket costs to Lessor associated with change orders or returns, invoicing errors and similar matters. Lessee agrees to any resulting adjustments in the transaction's terms, if different from those stated in the applicable Schedule.

3. **Term and Rental Payments.** The term of the lease for any Equipment ("Initial Lease Term"), its commencement date ("Lease Commencement Date"), and the amount of the rental payments ("Rent"), together with the sales tax thereon, if applicable, and the payment thereof, will be as provided in the Schedule related to such Equipment. The Initial Lease Term shall continue for the term stated in the Schedule. Rent shall be due on the same day of each Payment Period (as stated in the Schedule), in advance, as the Lease Commencement Date, unless otherwise stated on the Schedule. Rent paid in advance, if any, shall be applied to the first Rent due and then to the final Rents, in reverse order, or, at Lessor's option, to payment of any overdue obligation of Lessee.

4. **Payment Obligation.** All Rents and other payments due and payable under each Schedule shall be made to Lessor in immediately available funds of the United States of America at the following address: 1301 Pyott Road, Suite 103, Lake In The Hills, IL 60102, or at such other address as Lessor may designate from time to time. Rent shall be due and payable whether or not Lessee has received any notice that such Rent is due. **EACH SCHEDULE SHALL BE A NET LEASE, AND LESSEE'S OBLIGATION TO PAY ALL RENTS AND OTHER SUMS WHEN DUE AND TO OTHERWISE PERFORM AS REQUIRED UNDER THE SCHEDULE SHALL BE ABSOLUTE AND UNCONDITIONAL, AND SHALL NOT BE SUBJECT TO ANY ABATEMENT, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM, INTERRUPTION, DEFERMENT OR RECOUPMENT, FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF SUCH LEASE, LESSOR'S STRICT LIABILITY OR NEGLIGENCE, FROM THE CONDUCT OF A THIRD PARTY, OR OTHERWISE.** If any Equipment is unsatisfactory for any reason, Lessee shall make any claim solely against the manufacturer or supplier of such Equipment and shall, nevertheless, pay Lessor or its assignee all amounts due and payable under the Schedule.

5. **Use; Location.** Lessee will cause Equipment to be possessed and operated in accordance with any applicable manufacturer's manuals or instructions, by competent duly qualified personnel, in accordance with applicable governmental laws and regulations, if any, and for business purposes only. Lessee. Lessee agrees not to remove Equipment from the location as set forth in the related Schedule without Lessor's prior written consent, which consent will not be unreasonably withheld.

6. **Risk of Loss; Maintenance; Uninsured Loss and Damage.** Lessee assumes all risk of loss or damage to Equipment until its return to Lessor and agrees that Equipment will be installed and maintained in good operating condition at Lessee's expense, in compliance with all requirements necessary to enforce all Equipment warranty rights, and returned to Lessor as provided in Section 14 in good operating condition (ordinary wear and tear excepted). If any Equipment shall become lost, stolen, destroyed or damaged beyond repair and not be covered by insurance for any reason, or in the event of any condemnation, confiscation, seizure or expropriation of such item, Lessee shall immediately pay to Lessor the value of such item calculated by discounting to present value the aggregate of all unpaid amounts due or to become due as Rents or otherwise (including the purchase option amount or the estimated in-place fair market value of the item at the end of the Lease Term if no purchase option amount is specified) with respect to such item at 6% per annum, at which time Lessor will transfer to Lessee, without recourse or warranty, all of Lessor's right, title and interest, if any, in such Equipment.

7. **Alterations.** Lessee shall, at its expense, make such alterations to Equipment during the Lease Term as may be required by applicable legal and regulatory requirements. Lessee may make alterations, additions or improvements to Equipment provided such alterations, additions or improvements shall not materially decrease the value of Equipment or impair its utility. Any alteration, addition or improvement shall be at Lessee's expense and shall belong to and become the property of Lessor, subject to the terms of this Lease during the Lease Term of the related Equipment. Lessee may remove any such alteration, addition or improvement at the expiration of the Lease Term of such Equipment, provided Lessee shall repair any damage to Equipment or the premises where located resulting from or occasioned by such removal and provided any such removal shall not render Equipment incapable of use or operation for the purposes for which such Equipment was intended.

8. **Insurance.** As and from the earlier of the date upon which Lessor pays any part of the cost of Equipment or acquires ownership of or Lessee's right to use Equipment or assumes risk, responsibility and liability therefor and thereafter until all of Lessee's obligations under the related Schedule have been performed in full, Lessee shall at its sole expense:

    (a)    insure Equipment against "all risks" of physical loss or damage, including without limitation loss by fire (including extended coverage), theft, collision and such other risks of loss as are customarily covered by insurance on the type of Equipment leased hereunder by prudent operators of businesses similar to that in which Lessee is engaged, in such amounts, in such form and with such insurers as shall be satisfactory to Lessor, but in no event shall such insurance be less than the full replacement value of Equipment; and

    (b)    maintain public liability and property damage insurance in respect of the use, operation and possession of Equipment and the ownership thereof by Lessor with insurers satisfactory to Lessor in such form and with such limits of liability as Lessor may from time to time reasonably require.

Each insurance policy will name Lessor (and if Lessor requests at any time, any successor, assignee or secured party of Lessor) as loss payee for physical damage insurance and as additional insured for liability insurance, and shall contain a clause requiring the insurer to give Lessor at least 30 days' prior written notice of any alteration in the terms of such policy or of the cancellation thereof. At Lessor's request, Lessee shall furnish to Lessor a certificate or certificates of insurance or other evidence satisfactory to Lessor that such coverage is in effect, provided, however, that Lessor shall be under no duty to either ascertain the existence of or to examine such insurance policy or to advise Lessee in the event such insurance coverage shall not comply with the requirements hereof. Lessee will promptly notify Lessor of the occurrence of an event of loss and, at its expense, make all proofs of loss and take all other steps necessary to recover insurance benefits unless advised in writing by Lessor that Lessor desires so to do at Lessee's expense. Proceeds of insurance shall at the option of Lessor be disbursed by Lessor against satisfactory invoices for repair or replacement of Equipment, provided this Lease is not then in default, or be retained by Lessor for application against Lessee's obligations hereunder, and if the proceeds received are less than the present value of Equipment lost, as determined pursuant to Section 6, Lessee shall pay to Lessor the amount of such deficiency. The total or partial loss of Equipment or its use or possession shall not relieve Lessee from its obligations and liabilities hereunder.

1

mcic lessor form]

(Rev. 7/98)

(i)    Lessee is a corporation duly incorporated and validly existing in good standing under the laws of the jurisdiction of its incorporation, and has the corporate power to enter into this Agreement, each Schedule and all certificates and other documents required hereby or referred to herein;

(b)    this Agreement and each Schedule has been duly authorized by all necessary corporate action on the part of Lessee, has been duly executed and delivered on its behalf by its proper officers duly authorized in that regard, and constitutes the legal, valid and binding agreement of Lessee, enforceable against it in accordance with its terms (subject to applicable bankruptcy and other similar laws);

(c)    the execution, delivery, observance and performance of this Agreement and each Schedule do not and will not result in the breach of, constitute a default under, contravene any provision of, or result in the creation of any lien on or in any property or assets of Lessee pursuant to any of Lessee's outstanding shares or debt instruments or any agreement, indenture or other instrument to which Lessee is a party or by which Lessee or any of its property or assets may be bound or affected;

(d)    there is no action, suit or proceeding pending or, to the knowledge of Lessee, threatened in any court or tribunal or before any competent authority against Lessee or any of its property or assets which, in the reasonable and bona fide opinion of Lessee, may have a material adverse effect on the financial condition or business of Lessee; and

(e)    the financial statements and other information furnished and to be furnished to Lessor are and will be true and correct.

**10.**    **Warranties and Exclusion of Warranties.** Until such time as a Default shall have occurred hereunder, Lessor assigns to Lessee the benefit of any manufacturers' warranties or guarantees. LESSEE ACKNOWLEDGES THAT LESSOR DID NOT SELECT, MANUFACTURE OR SUPPLY EQUIPMENT. LESSEE FURTHER ACKNOWLEDGES THAT LESSOR LEASES EQUIPMENT AS-IS AND MAKES NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY. LESSEE HEREBY WAIVES ANY CLAIM (INCLUDING ANY CLAIM BASED ON STRICT OR ABSOLUTE LIABILITY IN TORT) IT MIGHT HAVE AGAINST LESSOR FOR ANY LOSS, DAMAGE (INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGE) OR EXPENSE CAUSED BY EQUIPMENT. LESSEE ACKNOWLEDGES THAT IT HAS MADE THE SELECTION OF EQUIPMENT BASED UPON ITS OWN JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE ON STATEMENTS MADE BY LESSOR OR ITS AGENTS. LESSEE FURTHER AGREES THAT THIS LEASE AGREEMENT SHALL BE DEEMED TO BE, WHETHER OR NOT THE TERMS HEREOF WOULD OTHERWISE BE SUBJECT THERETO, A FINANCE LEASE AS DEFINED IN THE CALIFORNIA COMMERCIAL CODE. Lessee hereby releases and forever discharges Lessor from any and all actions, claims, demands, costs, expenses, set-offs, abatements and compensation whatsoever, in connection with the foregoing. Upon Lessee's execution of a Schedule, Lessor shall be deemed to have fully performed and discharged all its obligations hereunder with respect to the related Equipment by providing Lessee with a possessory interest therein.

**11.**    **Default.** It shall be a default hereunder ("Default") if:

(a)    Lessee fails to pay any Rent or other amounts payable under a Schedule or hereunder and such failure shall have continued for 10 days;

(b)    Lessee fails or defaults in the due performance of any other obligation or provision of a Schedule or hereunder and such failure or default shall have continued for 10 days after notice from Lessor;

(c)    Lessee becomes insolvent or bankrupt, admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Lessee applies for or consents to the appointment of any receiver, trustee or similar officer for it or for all or any substantial part of its property; or such receiver, trustee or similar officer is appointed without the consent of Lessee; or Lessee institutes any bankruptcy, insolvency, reorganization, moratorium, arrangement, readjustment of debt, dissolution, liquidation or similar proceeding relating to it under the laws of any jurisdiction, or any such proceeding is instituted against Lessee and is not dismissed within 30 days; or any judgment, writ, warrant or attachment or execution of similar process is issued or levied against a substantial part of Lessee's property and remains unsatisfied for 30 days;

(d)    Lessee has misrepresented any representation, warranty or covenant made by Lessee to Lessor in connection with entering into this Agreement, any Schedule or any document or agreement in connection herewith, or any such representation, warranty or covenant is untrue or incorrect;

(e)    Lessee dissolves or otherwise terminates its corporate existence, or consolidates with or merges with or into any entity, or sells, leases or otherwise transfers all or substantially all of its assets or stock to any entity, or incurs a substantial amount of indebtedness other than in the ordinary course of its business, or engages in a leveraged buy-out or any other form of corporate reorganization, UNLESS in each case and before the event in question, either (i) Lessor confirms in writing that in its good faith opinion Lessee's financial condition and credit standing will not be impaired by the event, or (ii) Lessees obligations under each Schedule are assumed or guaranteed in a manner reasonably satisfactory to Lessor by an entity having in Lessor's good faith opinion at least as good financial condition and credit standing as those of Lessee immediately before the event;

(f)    Lessee does or permits to occur any act which may in the reasonable opinion of Lessor materially lessen the value of Equipment or Lessor's interest therein or increase the risk thereto; or

(g)    Lessee is in default under any other lease, contract, agreement or

**12.**    **Remedies.**

(a)    Upon Default Lessor may:

(i)    require Lessee to return any and all Equipment as provided in Section 14;

(ii)    without further notice, take possession of Equipment ("Repossession") and for such purpose Lessee hereby grants Lessor the right to enter the premises at the Equipment' location for the purpose of Repossession and waives claims for any damages, whether to property or otherwise, arising out of a Repossession;

(iii)    terminate this Lease Agreement and any Schedule;

(iv)    without terminating or being deemed to have terminated this Lease Agreement or any Schedule, as agent and attorney for Lessee sell or lease Equipment upon such terms as Lessor deems advisable ("Disposition"); or

(v)    in addition to any other right or remedy Lessor may have at law or in equity, demand as a genuine pre-estimate of liquidated damages for loss of bargain and not as a penalty, the then present value of all the unpaid and future Rent together with any other amounts owed under the applicable Schedule or hereunder, and (if Equipment is not returned to or repossessed by Lessor) the estimated in-place fair market value of Equipment at the end of the Lease Term (calculated by discounting such amounts at the rate of 6% per annum).

(b)    Lessee will pay all costs arising or incurred by Lessor as a result of Default, including reasonable legal fees and costs related to the Repossession, re-conditioning and Disposition of Equipment. Such costs will be deducted from the proceeds of any Disposition. In the event an amount in excess of the amount described in clause 12(a)(v) is received by Lessor, after costs, from the exercise of its remedies under Section 12(a), Lessor shall promptly pay to Lessee any such excess.

(c)    Lessee will pay Lessor interest at a rate equal to the lesser of 1-1/2% per month or the highest rate permitted by applicable law on all sums not paid by Lessee to Lessor when due and owing under the provisions of any Schedule or hereunder (the "Overdue Rate"). Such interest shall be due and payable monthly on the same days as provided for the payment of Rent so long as payment of any monies due and payable hereunder is in arrears.

(d)    All rights of Lessor are cumulative and not alternative and may be exercised by Lessor separately or together, in any order or combination.

**13.**    **Ownership; Personal Property; Labels.** Title to the Equipment is and shall remain in Lessor. During the Lease Term, Equipment shall be and remain movable, personal and chattel property and Lessee agrees to take all action necessary or reasonably requested by Lessor to ensure that Equipment shall be and remain personal property. Lessor shall not interfere with Lessee's right to possession and quiet enjoyment of Equipment during the Lease Term provided Lessee performs its obligations hereunder and under any Schedule pursuant to the terms and conditions hereunder and thereunder. Lessor may require plates, labels, or other markings to be affixed to or placed prominently upon Equipment indicating Lessor as the owner. To the extent this Agreement is determined to constitute a lease intended as security, Lessee grants Lessor a security interest in the Equipment and all replacements, substitutions, and accessories thereto as well as all proceeds thereof. Lessee shall, at its expense and upon Lessor's demand, promptly execute, acknowledge, deliver any and all further documents and take any and all other actions reasonably requested by Lessor from time to time, for the purpose of fully effectuating the intent and purposes of each Schedule, and to protect the interests of Lessor, its successors and assigns. Lessor may file a copy of this Lease Agreement in lieu of a financing statement.

**14.**    **Return.** At the expiration of the Initial Lease Term or earlier termination of each Schedule, provided Lessee has not exercised any purchase or renewal option in the Schedule, Lessee agrees to return all related Equipment to Lessor at a place within the continental United States reasonably designated by Lessor.

**15.**    **Indemnification.** Lessee shall be responsible for, and shall indemnify and save Lessor and its assignees harmless from and against all losses, claims, costs, expenses, damages, actions, liabilities, personal injuries, including without limitation attorneys' fees, in connection with, and arising from, this Agreement and/or any Schedule, Equipment, the manufacture, acquisition, possession, ownership, use, maintenance, condition, return or operation of Equipment, provided that this indemnity shall not extend to any loss caused solely by the gross negligence or willful misconduct of Lessor. Lessee shall give Lessor prompt notice of any occurrence, event or condition in connection with which Lessor may be entitled to indemnification hereunder. The indemnity herein shall survive termination of this Agreement.

**16.**    **Encumbrances.** Lessee shall, at Lessee's expense, keep Equipment free and clear of liens, security interests, attachments, seizures and encumbrances of any kind (except those arising hereunder or solely through the acts of Lessor).

**17.**    **Remedying Defaults.** If Lessee shall fail to perform or comply with any of Lessee's obligations hereunder and/or under a Schedule, Lessor in its discretion may do all such reasonable acts and make all such reasonable disbursements as may be necessary to cure such Default and any disbursements so made shall be payable by Lessee on demand, together with interest at the Overdue Rate from the date of disbursement by Lessor to the date of payment by Lessee.

2

18. **Notices.** Notices with respect to this Agreement or any Schedule hereunder shall be in writing delivered to such officer of the recipient party or by prepaid receipted delivery addressed to such party at its address set forth above or such other address as it may in writing direct. Notice shall be deemed effective upon dispatch.

19. **Assignments.**

(a)     This Agreement, including any Schedule, is not assignable by Lessee nor may Lessee assign or sublet Equipment without the consent of Lessor. Any attempted assignment or subletting without Lessor's consent shall be void and of no force and effect.

(b)     Lessor may at any time without notice to Lessee, but subject to the rights of Lessee hereunder, transfer or assign this Agreement or any Schedule or any Equipment or any Rent or other monies and benefits due or to become due hereunder.

20. **Survival.** All of the representations, warranties, covenants and agreements of Lessee contained in this Agreement and each Schedule shall survive the expiration or earlier termination of such Schedule and the Lease Term of Equipment leased thereunder until all obligations of Lessee under the Schedule(s) and this Agreement have been performed in full.

21. **Governing Law; Jurisdiction; Waiver of Jury Trial.** THIS AGREEMENT AND EACH SCHEDULE SHALL BE GOVERNED IN ALL RESPECTS BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE WHERE LESSOR'S PRINCIPAL PLACE OF BUSINESS IS LOCATED. LESSEE IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURT LOCATED THEREIN, AND WAIVES TO THE FULLEST EXTENT ALLOWED BY LAW ANY OBJECTION TO VENUE IN SUCH COURT, AND FURTHER WAIVES ANY RIGHT TO A TRIAL BY JURY. HOWEVER, IN THE EVENT THAT THIS AGREEMENT OR ANY SCHEDULE IS ASSIGNED BY LESSOR, LESSEE AGREES THAT SUCH SCHEDULE (AND FOR PURPOSES THEREOF, THIS AGREEMENT) SHALL BE INTERPRETED UNDER THE SUBSTANTIVE LAWS OF THE STATE OF ILLINOIS WITHOUT REGARD TO SUCH STATE'S CHOICE OF LAW RULES OR PRINCIPLES. MOREOVER, LESSEE SUBMITS TO THE PERSONAL JURISDICTION OF THE COURTS OF SUCH STATE AND WAIVES ANY RIGHT TO CLAIM THAT SUCH FORUM IS INCONVENIENT OR IMPROPER.

(a)     1.   Agreement shall be binding upon and inure to the benefit of Lessor and its successors and assigns and shall be binding upon Lessee and the heirs, executors, administrators, successors and permitted assigns and sublessees of Lessee.

(b)     No term, condition or provision of this Agreement will be waived or deemed to have been waived by Lessor except in writing.

(c)     If more than one person, firm or corporation executes this Agreement as Lessee, their respective liabilities hereunder will be both joint and several, but Lessor will be fully discharged in respect of any obligation hereunder upon performance of that obligation to any one of them.

(d)     Lessee shall furnish its financial statements to Lessor within 120 days after the close of each fiscal year of Lessee, prepared in accordance with generally accepted accounting principles consistently applied. Lessee shall also furnish such other financial information as Lessor may from time to time reasonably request.

(e)     Any term, condition or provision of this Agreement which is or is deemed to be void, prohibited or unenforceable in any jurisdiction is, as to such jurisdiction, severable herefrom and ineffective to the extent of such avoidance, prohibition or unenforceability, without invalidating the remaining terms, conditions and provisions hereof.

(f)     To the extent permitted by applicable law, Lessee waives any and all rights and remedies conferred upon Lessee under Uniform Commercial Code Sections 2A-303 and 2A-508 through 2A-522.

(g)     "This Lease Agreement", "Lease Agreement", "this Agreement", "this lease", "hereto", "herein", "hereof", "hereby", "hereunder" and similar expressions refer to this Master Lease Agreement and include all Schedules.

(h)     Lessee acknowledges receipt of a copy of this Agreement.

(i)     This Agreement and each Schedule may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original (except that to the extent, if any, this Agreement or any Schedule constitutes chattel paper, no security interest therein may be created except through the transfer or possession of the original counterpart, which shall be identified by Lessor), but all such counterparts taken together shall constitute one and the same instrument.

(j)     This Agreement and Schedules hereto constitute the entire agreement between Lessor and Lessee and may be amended only in writing signed by Lessor and Lessee. By initialing this provision, Lessee agrees to be bound by the terms of this Agreement and, to the extent applicable, that the provision concerning a separately signed document pursuant to Uniform Commercial Code Section 2A-208 has been complied with.

Lessee's Initials

AMERICAN LEASING ALLIANCE, LLC
d/b/a Graphic Arts Capital, LLC
"Lessor"

BY: _____

NAME:     James A. Brustad

TITLE:     Vice-President

DATE:     11-6-98

FLASH 1 HOUR FOTO, INC.
"Lessee"

BY: _____

NAME:     Niranjan Patel

TITLE:     Vice-President

DATE:     11-6-98

[generic lessor form]

3




Capital

COUNTERPART NO. __1__ OF __3__. POSSESSION AND TRANSFER OF COUNTERPART NO. 1 ONLY IS EFFECTIVE TO TRANSFER OWNERSHIP OF OR CREATE A SECURITY INTEREST IN THIS SCHEDULE.

## LEASE SCHEDULE
## NO.__003_____

INCORPORATING THE TERMS AND CONDITIONS OF MASTER LEASE AGREEMENT NO.: __GACC121598_____ ("Master Lease Agreement") DATED ____11-6____, 19_98_ BETWEEN AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC ("Lessor") AND ____FLASH 1 HOUR FOTO, INC._____ ("Lessee").

Lessor hereby agrees to lease and/or make available to Lessee upon and subject to the terms, conditions and provisions set forth in this Lease Schedule ("Schedule"), and in the above referenced Master Lease Agreement, the Equipment described or identified below (any term not defined herein shall have the meaning ascribed to it in the Master Lease Agreement):

### EQUIPMENT DESCRIPTION

| Equipment | Acquisition Amount | Supplier |
|---|---|---|
| One (1) Challenge Titan 200 Paper Cutter | | Tompkins Printing Equipment Co. |
| One (1) Challenge Model T1 Jogger | | 5050 North Foss Street |
| One (1) Baum 714MP Autofold | $23,854.00 | Schiller Park IL 60176 |

Aggregate Acquisition Amount: __$23,854.00__

LOCATION OF EQUIPMENT: 1720 North Rand Road, Palatine, IL 60074

1. **TERM AND RENT PROVISIONS**

   Initial Lease Term: ____60____ months    Payment Period (check one):    ■ monthly
      ☐ quarterly
   Lease Commencement Date: __March 10, 1999__    ☐ annually

   Lease Rate Factor: __.02105056__    $1.00 Purchase Option
   ~~.02068566~~

   **TOTAL PERIODIC RENT SCHEDULE** (all installments of Rent are subject to applicable taxes):

   ____60____ installments of Rent at $ __502.14__ ~~493.44~~ _____ each

   Initial Payment of $~~493.44~~ 502.14 covering the First Monthly Rental Payment.

   *Plus, if applicable, freight, taxes, insurance and maintenance which shall be paid by Lessee in accordance with the terms of this Lease and this Schedule.

2. **PURCHASE OPTION:** At the expiration of the Initial Lease Term above, provided no event of Default has occurred and is continuing, Lessee shall have the right to acquire the Equipment for $1.00. On payment of the option price, plus sales and other taxes, if applicable, the Equipment will be sold to Lessee in its then condition, quantity and location, on an "as is, where is" basis, free and clear of liens, charges or encumbrances created by Lessor, without further warranties or representations whatsoever, expressed or implied, on the part of Lessor.

3. **RENT ADJUSTMENT.** The Lease Rate Factor quote is based upon 60 month Treasury Notes. If at Lease Commencement, Treasury Notes with that same maturity are either less than or greater than the rate quoted to Lessee by more than 25 basis points, then the Lease Rate Factor will be adjusted to reflect the change. For each 1/4 of 1% increase or decrease which occurs in the rate upon which such quote was based, the Lease Rate Factor will be adjusted. Lessor is hereby authorized to make such adjustments as may be necessary upon receipt of a Certificate of Acceptance executed by Lessee.

[$1.00 Option]      (Rev. 7/98)

4.  **AGREEMENT.** This Schedule shall be deemed to take effect and incorporate the terms and conditions of the Master Lease Agreement pursuant to Section 1 thereof on the date Lessor receives a Certificate of Acceptance duly executed by Lessee and an invoice from the vendor of the Equipment which is the subject of such Certificate with such invoice to be in Lessor's name. Lessee hereby authorizes Lessor to insert as the Lease Commencement Date the date Lessor receives an executed Certificate of Acceptance and, where applicable, the serial number of the Equipment. Lessee hereby agrees that the Equipment shall not be removed from the above location without prior written notice to Lessor.

5.  **TAXES.** Lessee alone is responsible for filing all property tax returns with respect to the Equipment and directly paying all such taxes. In the event that Lessee fails or refuses to pay same, Lessor may pay such taxes and Lessee shall reimburse Lessor with interest at the lesser of 1½ percent per month or the highest rate permitted by law.

6.  **ADDITIONAL PROVISIONS:**


**AMERICAN LEASING ALLIANCE, LLC**
**d/b/a Graphic Arts Capital, LLC**
**"Lessor"**

BY: _____

NAME: James A. Brustad

TITLE: Vice-President

DATE: 12/15/98

**FLASH 1 HOUR FOTO, INC.**
**"Lessee"**

BY: _____

NAME: Niranjan Patel

TITLE: V President

DATE: 12-15-98




2

# Exhibit I

Lease No. __GACC121598-003__



# PURCHASE AGREEMEENT ASSIGNMEENT

This Purchase Agreement Assignment, dated _____12/15_____. 19 98 , is betwe m _____
_____FLASH 1 HOUR FOTO, INC._____ , a ____Illinois_____corporation ("Ass ignor") and
AMERICAN LEASING ALLIANCE, LLC, d/b/a Graphic Arts Capital, LLC ("Assi; nee").

WHEREAS, Assignor has entered into purchase agreements or purchase orders, date I ___
_____December 9_____ , 1998 , ("Purchase Agreement") between Assignor an I _____
_____TOMPKINS PRINTING EQUIPMENT COMPANY_____ ("Vendo1 "), a true,
correct and complete copy of which Purchase Agreement is attached hereto, providin g for the
sale to Assignor of various equipment, as more fully described on Schedule A attach :d hereto
and made a part hereof (the "Equipment").

WHEREAS, Assignor desires that Assignee acquire the Equipment and lease the Eq1 ipment to
Assignor pursuant to the terms of a Master Lease No.___GACC121598____ Equipme1t Schedule
No. ____003____ (the "Lease").

NOW, THEREFORE, the parties hereto agree as follows:

1.      Assignor does hereby sell assign, transfer and set unto Assignee all of Assign or's right
title and interest in, under and to the Purchase Agreement and in and to the Equipme1t and all
software licenses related thereto and subject to the representations and warranties an( . terms and
conditions set forth herein Assignee hereby accepts such assignment

2.      Assignor may not amend, modify, rescind or terminate the purchase agreeme 1t without
the prior written consent of Assignee, which consent shall not be unreasonably withh eld.

3 .      It is agreed that anything herein contained to the contrary notwithstanding: (a) Assignor
shall at all times remain liable to Vendor under the Purchase Agreement to perform a ll the duties
and obligations of the purchaser thereunder to the same extent as if this Agreement h id not been
executed, and Assignee does not assume and shall not be obligated to perform any of these duties
and obligations, except as set forth in (c) below; (b) the exercise by Assignee of any ·)f the rights
assigned hereunder shall not release Assignor from its duties or obligations to Vendc r under the
Purchase Agreement; (c) the Assignee accepts only the obligation to purchase the Eq 1ipment and
any software licenses related thereto for an amount equal to the purchase price as des cribed in the
Purchase Agreement; and (d) the obligation of the Assignee to purchase the Equipme nt is
conditioned upon acceptance of the Equipment by the Assignor under the terms of th 3 Lease.

4.    Assignor agrees at any time and from time to time upon written request of Assignee to promptly and duly execute and deliver any and all such further instruments and documents and take such other actions as Assignee may reasonably request in order to obtain the full benefits of this Agreement and of the rights and powers granted herein.

5.    Assignor does hereby represent and warrant that: (a) the Purchase Agreement attached hereto is a true, correct and complete original or duplicate copy thereof and that no amendment or modification thereto has occurred; (b) the Purchase Agreement is in full force and effect and enforceable in accordance with its terms and Assignor is not in default thereunder; (c) Assignor has the legal right to enter into this Agreement; (d) the Purchase Agreement is free from all claims, security interests, liens and encumbrances, except for the interest being conveyed hereunder and the interest of Assignor therein.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed on or as of the day and year first above written.

FLASH 1 HOUR FOTO, INC.
Assignor

By: _____

Title: _____
Vice-President
12/15/98

AMERICAN LEASING ALLIANCE, LLC
d/b/a Graphic Arts Capital, LLC
Assignee

By: _____

Title:    Vice-President

## CONSENT AND ACKNOWLEDGEMENT OF PURCHASE AGREEMENT ASSIGNMENT

The undersigned hereby consents to the attached Purchase Agreement Assignment between Assignor and Assignee and consents to and accepts said Assignment on and subject to the terms and conditions therein set forth.  The undersigned hereby represents and warrants that the Purchase Agreement attached thereto is a true, complete and correct copy of the Purchase Agreement and that the Purchase Agreement has not been amended or modified and will not be modified or amended without the prior written consent of Assignee.  The undersigned hereby further acknowledges that the Assignee intends to rely on the foregoing representations and warranties.

TOMPKINS PRINTING EQUIPMENT COMPANY
Vendor

By: _____

Title: _____

Date: _____

# Exhibit J

# ASSIGNMENT

American Leasing Alliance, LLC, d/b/a Graphic Arts Capital, LLC, an Illinois Limited Liability Company, having a place of business at 1301 Pyott Road, Suite 103 Lake in the Hills, Illinois 60102 ("Seller"), hereby sells, assigns, transfers and conveys to Newcourt Financial USA, Inc., a Delaware corporation having a place of business at 111 Monument Circle, Suite 2700, Indianapolis, IN 46204-5122 ("Newcourt"), pursuant to that certain Master Assignment Agreement, dated as of March 1, 1999, between Seller and Newcourt (the "Agreement"), the Transactions, together with the Equipment and any other rights, interests, collateral and proceeds associated therewith under the Agreement, as same are identified as follows:

| Lessee | Schedule # | Next Payment Date | Monthly Rental Amount | Discount Rate | Nature of Rights |
|--------|-----------|-------------------|----------------------|---------------|------------------|
| Flash 1 Hour Foto, Inc. | 003 | April 10, 1999 | $502.14 | 9.00% | $1 Purchase Option; Entire contract and security interest in Equipment transferred. |

Both Seller and Newcourt acknowledge and agree that the assignment from Seller to Newcourt of such Transaction and Equipment is subject to the terms, conditions, representations, warranties and covenants set forth in the Agreement. Capitalized terms utilized but not defined herein shall have the meanings ascribed to them in the Agreement.

Dated this ___15th___ day of _____March_____, 1999.

**"Seller"**
American Leasing Alliance, LLC
d/b/a Graphic Arts Capital, LLC

By: _____

Name:_____James A. Brustad___

Title:_____Vice-President_____

**"Newcourt"**
Newcourt Financial USA, Inc

By:_____

Name:_____

Title:_____

# Exhibit K

March 10, 1999

Mr. Nick Patel
**FLASH 1 HOUR FOTO, INC.**
1720 North Rand Road
Palatine, IL 60067

## NOTICE AND ACKNOWLEDGEMENT OF ASSIGNMENT

Dear Mr. Patel:

Graphic Arts Capital, LLC is pleased to provide you with copies of the executed Equipment Lease Number GACC121598 and the Lease Schedule -003 thereto.

We (as "Lessor") hereby notify you (as "Lessee") and direct that:

A. By a Lease Purchase Agreement and in accordance with its terms, we have assigned all of our rights and obligations under the Lease to NEWCOURT FINANCIAL USA, INC. (as "Assignee") as of _____ March 10, 1999 _____ (the "Rent Assignment Date").

B. Until further written notice to the contrary is received by you from Assignee, all lease rentals and any other payments due on and after the Rent Assignment Date under the Lease (the "Monies") shall be paid by the date due directly by you to Assignee at the following address:

_____ 303 East Wacker Drive
_____ Chicago, Illinois 60601

## ACKNOWLEDGMENT

Lessee acknowledges that:

(i) the initial term of the Lease is __60__ months, commencing on __March 10__, 1999 and ending on _____ February 10 __, 2004; (ii) the regular monthly rental is $ 5( 2.14 , exclusive of applicable taxes and shall be due and payable on the __10th__ day of each month during the term beginning with any payments due as of the commencement date set forth in the Lease and there are __fifty-nine (59)__ consecutive monthly rentals in the above amount remaining, beginning with the payment due on __April 10__, 1999; (iii) there are no additional agreements between Lessee and Lessor relating to the equipment ("Equipment") under the Lease; (iv) the Lease is in full force and effect; (v) the Equipment currently is in its possession and control at the location indicated on the lease or any lease schedule(s)



Mr. Nick Patel
**FLASH 1 HOUR FOTO, INC.**
March 10, 1999
Page Two

(vi) there are no judgments, suits or proceedings, pending or threatened, against Lessee which would adversely affect its ability to make payments under the Lease; (vii) it is aware of no claim of any kind or nature in or to the Lease, the rents provided thereunder or the Equipment or of any lien thereon other than the interests of Lessee, Lessor and Assignee; (viii) it consents to the assignment herein by Lessor and will remit and deliver all Monies directly to Assignee at the address set forth above; (ix) it will deliver copies of all notices and other communications given to or made by Lessee pursuant to the Lease, to Assignee at the following address: 303 East Wacker Drive, Chicago, Illinois 60601; (x) it will not enter into any agreement amending, modifying or terminating the Lease without the prior written consent of Assignee; and (xi) it has not made with respect to Lessor, nor will it make with respect to Assignee, any claims, offsets, demands or defenses of any kind, nature or description with reference to any of Lessor's obligations under the Lease.

The parties hereto agree that in lieu of any covenant of quiet enjoyment that may be given on behalf of Assignee in the Lease, Assignee hereby covenants that so long as Lessee is not in default of any provisions of the Lease and has not breached any of its covenants or representations in this Notice and Acknowledgment, Assignee will no disturb the Lessee's quiet and peaceful possession of the Equipment or its unrestricted use thereof for its intended purposes.

If you should have any questions with regard to your lease or the assignment thereof, please do not hesitate to contact the undersigned at 847-458-0191.

Thank you for allowing Graphic Arts Capital, LLC the opportunity to be of service to your company and if their are any additional leasing or financing needs that you may have in the future, please allow us that opportunity as well.

Sincerely,

**GRAPHIC ARTS CAPITAL, LLC**
Lessor

James Brustad
Vice-President

CUSTOMER ACKNOWLEDGEMENT:
**FLASH 1 HOUR FOTO, INC.**
Lessee

By: _____

Date: _____3|12|99_____

ASSIGNEE ACKNOLWEDGMENT:
**NEWCOURT FINANCIAL USA, INC.**
Assignee

By: _____

Date: _____



# Exhibit L

GOULD & RATNER

DAVID F. BARTLETT
312/899-1696
dbartlett@gouldratner.com

September 27, 2002

Flash 1 Hour Foto, Inc.
Attention: Mr. Niranjan Patel
1720 North Rand Road
Palatine, Illinois 60074

Re:     Flash 1 Hour Foto, Inc.
        Lease Agreement GACC121598-003

Dear Mr. Patel:

As of this date, CIT Financial's attempts to amicably resolve the past-due status of Lease Agreement GACC121598 dated November 6, 1998, have been unsuccessful. Therefore, CIT Financial is exercising certain remedies provided under the terms of Lease Agreement GACC121598-003, dated December 15, 1998, a copy of which is attached to this correspondence.

Pursuant to paragraph 11(g) of Lease Agreement GACC121598-003, CIT Financial hereby declares the agreement to be in default and further declares all current, future and past due obligations to become immediately due and payable. As such, CIT Financial hereby demands payment in full of the contract balance of $8,536.38. Unless payment in full is received within seven (7) days of this letter, we have been instructed to undertake whatever legal action is necessary to protect our client's interest.

Sincerely,

David F. Bartlett

DFB:jlh
Enclosure
cc:     Rob Olsen (w/o enclosures)
        Ted Kommers



222 North LaSalle Street, Eighth Floor, Chicago, Illinois 60601
Telephone 312/236-3003 Facsimile 312/236-3241 www.gouldratner.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

JAN 2 1 2003

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| | |
|---|---|
| **Plaintiff(s): CIT FINANCIAL USA, INC. F/K/A NEWCOURT FINANCIAL USA, INC.** | **Defendant(s):FLASH 1 HOUR FOTO, INC., NIRANJAN PATEL, AND KAUSHALYA PATEL** |
| County of Residence: COOK | County of Residence: COOK  **JUDGE NORGLE** |
| Plaintiff's Atty: CHRISTOPHER HORVAY/DAVID BARTLETT GOULD & RATNER, SUITE 800 222 N. LASALLE ST., CHICAGO, IL 60601 312-236-3003 | Defendant's Atty: **03 C 00397** MICHAEL BOHRMAN MARCUS PERRES 19 S. LASALLE, SUITE 1500, CHICAGO, 60603 312-641-2233  **MAGISTRATE JUDGE NOLAN** |

II. Basis of Jurisdiction:       **3. Federal Question (U.S. not a party)**

III. Citizenship of Principal
Parties **(Diversity Cases Only)**
                     Plaintiff:- **N/A**
                     Defendant:- **N/A**

U.S. DISTRICT COURT
03 JAN 17 PH 3: 13
FILED-EDA

IV. Origin :                **1. Original Proceeding**

V. Nature of Suit:          **140 Negotiable Instrument**

VI.Cause of Action:         **This is a breach of contract action. The court has jurisdiction pursuant to 28 U.S.C. 1332 because this dispute is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of costs and interest. Venue is proper in the District Court for the Northern District of Illinois purusant to 28 U.S.C. 1391(a) in that juridiction is based on diversity of citizenship and a substantial part of the events givien rise to the claim occurred in this District.**

VII. Requested in Complaint
         Class Action: **No**
         Dollar Demand: $~~8,586.32~~  **$178,324.27**
         Jury Demand: **No**

VIII. This case **IS** a refiling of a previously dismissed case: Case number **02 C 7385** by Judge **Norgle**

**Signature:** *David Bartlett*

**Date:** 1/17/03

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**   Revised: 06/28/00

NOTE: When the print dialogue
box appears, be sure to
uncheck the Annotations option.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division



Double click on question
mark for appearance form
instructions

In the Matter of

CIT Financial USA, Inc. f/k/a Newcourt Financial USA,
Inc.

v.

Flash 1 Hour Foto, Inc., Niranjan Patel and Kaushalya Patel

**DOCKETED**

JAN 2 1 2003  Case Number

JUDGE NORGLE

03 C 00397

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

CIT Financial USA, Inc.

MAGISTRATE JUDGE NOLAN

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Christopher J. Horvay | NAME David F. Bartlett |
| FIRM Gould & Ratner | FIRM Gould & Ratner |
| STREET ADDRESS 222 N. LaSalle Street, 8th Floor | STREET ADDRESS 222 N. LaSalle Street, 8th Floor |
| CITY/STATE/ZIP Chicago, Illinois 60601 | CITY/STATE/ZIP Chicago, Illinois 60601 |
| TELEPHONE NUMBER (312) 236-3003 | TELEPHONE NUMBER (312) 236-3003 |
| IDENTIFICATION NUMBER 01263315 | IDENTIFICATION NUMBER 6236672 |
| MEMBER OF TRIAL BAR? YES ✓ NO | MEMBER OF TRIAL BAR? YES ✓ NO |
| TRIAL ATTORNEY? YES ✓ NO | TRIAL ATTORNEY? YES ✓ NO |
| | DESIGNATED AS LOCAL COUNSEL? YES NO |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES NO | MEMBER OF TRIAL BAR? YES NO |
| TRIAL ATTORNEY? YES NO | TRIAL ATTORNEY? YES NO |
| DESIGNATED AS LOCAL COUNSEL? YES NO | DESIGNATED AS LOCAL COUNSEL? YES NO |

1-3